JS 44 (Rev. 10/20)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS
Christopher D. Beaty, Jr. & Nichole H. Garcia, Co-Administrators of the Estate of Christopher David Beaty,

**(b)** County of Residence of First Listed Plaintiff    Delaware
*(EXCEPT IN U.S. PLAINTIFF CASES)*

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Stephen J. Pokiniewski, Jr., Esquire, Anapol Weiss, 130 N. 18th St., Ste. 1600, Phila., PA 19103; 215-735-2435

### DEFENDANTS
Fair Acres Geriatric Center & Delaware County

County of Residence of First Listed Defendant    Delaware
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE:    IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- [ ] 1 U.S. Government Plaintiff
- [x] 3 Federal Question *(U.S. Government Not a Party)*
- [ ] 2 U.S. Government Defendant
- [ ] 4 Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | [ ] 1 | [ ] 1 | Incorporated *or* Principal Place of Business In This State | [ ] 4 | [ ] 4 |
| Citizen of Another State | [ ] 2 | [ ] 2 | Incorporated *and* Principal Place of Business In Another State | [ ] 5 | [ ] 5 |
| Citizen or Subject of a Foreign Country | [ ] 3 | [ ] 3 | Foreign Nation | [ ] 6 | [ ] 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*
Click here for: Nature of Suit Code Descriptions.

### CONTRACT
- [ ] 110 Insurance
- [ ] 120 Marine
- [ ] 130 Miller Act
- [ ] 140 Negotiable Instrument
- [ ] 150 Recovery of Overpayment & Enforcement of Judgment
- [ ] 151 Medicare Act
- [ ] 152 Recovery of Defaulted Student Loans (Excludes Veterans)
- [ ] 153 Recovery of Overpayment of Veteran's Benefits
- [ ] 160 Stockholders' Suits
- [ ] 190 Other Contract
- [ ] 195 Contract Product Liability
- [ ] 196 Franchise

### REAL PROPERTY
- [ ] 210 Land Condemnation
- [ ] 220 Foreclosure
- [ ] 230 Rent Lease & Ejectment
- [ ] 240 Torts to Land
- [ ] 245 Tort Product Liability
- [ ] 290 All Other Real Property

### TORTS
**PERSONAL INJURY**
- [ ] 310 Airplane
- [ ] 315 Airplane Product Liability
- [ ] 320 Assault, Libel & Slander
- [ ] 330 Federal Employers' Liability
- [ ] 340 Marine
- [ ] 345 Marine Product Liability
- [ ] 350 Motor Vehicle
- [ ] 355 Motor Vehicle Product Liability
- [ ] 360 Other Personal Injury
- [x] 362 Personal Injury - Medical Malpractice

**PERSONAL INJURY**
- [ ] 365 Personal Injury - Product Liability
- [ ] 367 Health Care/ Pharmaceutical Personal Injury Product Liability
- [ ] 368 Asbestos Personal Injury Product Liability

**PERSONAL PROPERTY**
- [ ] 370 Other Fraud
- [ ] 371 Truth in Lending
- [ ] 380 Other Personal Property Damage
- [ ] 385 Property Damage Product Liability

### CIVIL RIGHTS
- [ ] 440 Other Civil Rights
- [ ] 441 Voting
- [ ] 442 Employment
- [ ] 443 Housing/ Accommodations
- [ ] 445 Amer. w/Disabilities - Employment
- [ ] 446 Amer. w/Disabilities - Other
- [ ] 448 Education

### PRISONER PETITIONS
**Habeas Corpus:**
- [ ] 463 Alien Detainee
- [ ] 510 Motions to Vacate Sentence
- [ ] 530 General
- [ ] 535 Death Penalty
**Other:**
- [ ] 540 Mandamus & Other
- [ ] 550 Civil Rights
- [ ] 555 Prison Condition
- [ ] 560 Civil Detainee - Conditions of Confinement

### FORFEITURE/PENALTY
- [ ] 625 Drug Related Seizure of Property 21 USC 881
- [ ] 690 Other

### LABOR
- [ ] 710 Fair Labor Standards Act
- [ ] 720 Labor/Management Relations
- [ ] 740 Railway Labor Act
- [ ] 751 Family and Medical Leave Act
- [ ] 790 Other Labor Litigation
- [ ] 791 Employee Retirement Income Security Act

### IMMIGRATION
- [ ] 462 Naturalization Application
- [ ] 465 Other Immigration Actions

### BANKRUPTCY
- [ ] 422 Appeal 28 USC 158
- [ ] 423 Withdrawal 28 USC 157

### PROPERTY RIGHTS
- [ ] 820 Copyrights
- [ ] 830 Patent
- [ ] 835 Patent - Abbreviated New Drug Application
- [ ] 840 Trademark
- [ ] 880 Defend Trade Secrets Act of 2016

### SOCIAL SECURITY
- [ ] 861 HIA (1395ff)
- [ ] 862 Black Lung (923)
- [ ] 863 DIWC/DIWW (405(g))
- [ ] 864 SSID Title XVI
- [ ] 865 RSI (405(g))

### FEDERAL TAX SUITS
- [ ] 870 Taxes (U.S. Plaintiff or Defendant)
- [ ] 871 IRS—Third Party 26 USC 7609

### OTHER STATUTES
- [ ] 375 False Claims Act
- [ ] 376 Qui Tam (31 USC 3729(a))
- [ ] 400 State Reapportionment
- [ ] 410 Antitrust
- [ ] 430 Banks and Banking
- [ ] 450 Commerce
- [ ] 460 Deportation
- [ ] 470 Racketeer Influenced and Corrupt Organizations
- [ ] 480 Consumer Credit (15 USC 1681 or 1692)
- [ ] 485 Telephone Consumer Protection Act
- [ ] 490 Cable/Sat TV
- [ ] 850 Securities/Commodities/ Exchange
- [ ] 890 Other Statutory Actions
- [ ] 891 Agricultural Acts
- [ ] 893 Environmental Matters
- [ ] 895 Freedom of Information Act
- [ ] 896 Arbitration
- [ ] 899 Administrative Procedure Act/Review or Appeal of Agency Decision
- [ ] 950 Constitutionality of State Statutes

## V. ORIGIN *(Place an "X" in One Box Only)*
- [x] 1 Original Proceeding
- [ ] 2 Removed from State Court
- [ ] 3 Remanded from Appellate Court
- [ ] 4 Reinstated or Reopened
- [ ] 5 Transferred from Another District *(specify)*
- [ ] 6 Multidistrict Litigation - Transfer
- [ ] 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
Section 1983

Brief description of cause:
Failure to adopt and enforce policies and procedures to protect long term care resident from COVID 19

## VII. REQUESTED IN COMPLAINT:
[ ] CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

DEMAND $   In excess of 75,000.00

CHECK YES only if demanded in complaint:
JURY DEMAND: [x] Yes   [ ] No

## VIII. RELATED CASE(S) IF ANY
*(See instructions):*
JUDGE        DOCKET NUMBER

DATE
April 5, 2021

SIGNATURE OF ATTORNEY OF RECORD
s/Stephen J. Pokiniewski, Jr.

**FOR OFFICE USE ONLY**

RECEIPT #      AMOUNT      APPLYING IFP      JUDGE      MAG. JUDGE

# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

### DESIGNATION FORM
*(to be used by counsel or pro se plaintiff to indicate the category of the case for the purpose of assignment to the appropriate calendar)*

Address of Plaintiff: _____

Address of Defendant: _____

Place of Accident, Incident or Transaction: _____

---

**RELATED CASE, IF ANY:**

Case Number: _____     Judge: _____     Date Terminated: _____

Civil cases are deemed related when *Yes* is answered to any of the following questions:

1. Is this case related to property included in an earlier numbered suit pending or within one year previously terminated action in this court?     Yes ☐     No ☐

2. Does this case involve the same issue of fact or grow out of the same transaction as a prior suit pending or within one year previously terminated action in this court?     Yes ☐     No ☐

3. Does this case involve the validity or infringement of a patent already in suit or any earlier numbered case pending or within one year previously terminated action of this court?     Yes ☐     No ☐

4. Is this case a second or successive habeas corpus, social security appeal, or pro se civil rights case filed by the same individual?     Yes ☐     No ☐

I certify that, to my knowledge, the within case ☐ **is** / ☐ **is not** related to any case now pending or within one year previously terminated action in this court except as noted above.

DATE: _____     s/ *Stephen J. Pakiniewski, Jr.* <span style="color:red">Must sign here</span>     _____

                                   *Attorney-at-Law / Pro Se Plaintiff*     *Attorney I.D. # (if applicable)*

---

**CIVIL: (Place a √ in one category only)**

**A.**  *Federal Question Cases:*

☐ 1. Indemnity Contract, Marine Contract, and All Other Contracts
☐ 2. FELA
☐ 3. Jones Act-Personal Injury
☐ 4. Antitrust
☐ 5. Patent
☐ 6. Labor-Management Relations
☐ 7. Civil Rights
☐ 8. Habeas Corpus
☐ 9. Securities Act(s) Cases
☐ 10. Social Security Review Cases
☐ 11. All other Federal Question Cases
    *(Please specify): _____*

**B.**  *Diversity Jurisdiction Cases:*

☐ 1. Insurance Contract and Other Contracts
☐ 2. Airplane Personal Injury
☐ 3. Assault, Defamation
☐ 4. Marine Personal Injury
☐ 5. Motor Vehicle Personal Injury
☐ 6. Other Personal Injury *(Please specify): _____*
☐ 7. Products Liability
☐ 8. Products Liability – Asbestos
☐ 9. All other Diversity Cases
    *(Please specify): _____*

---

### ARBITRATION CERTIFICATION
*(The effect of this certification is to remove the case from eligibility for arbitration.)*

I, _____, counsel of record *or* pro se plaintiff, do hereby certify:

☐ Pursuant to Local Civil Rule 53.2, § 3(c) (2), that to the best of my knowledge and belief, the damages recoverable in this civil action case exceed the sum of $150,000.00 exclusive of interest and costs:

☐ Relief other than monetary damages is sought.

DATE: _____     s/ *Stephen J. Pakiniewski, Jr.* <span style="color:red">Sign here if applicable</span>     _____

                                   *Attorney-at-Law / Pro Se Plaintiff*     *Attorney I.D. # (if applicable)*

NOTE: A trial de novo will be a trial by jury only if there has been compliance with F.R.C.P. 38.

**UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| Christopher Beaty, Jr. and Nichole Garcia, as Co-Administrators of the Estate of Christopher David Beaty, Deceased, and in their Own Right,<br><br>*Plaintiffs*,<br><br>v.<br><br>FAIR ACRES GERIATRIC CENTER<br>340 N. Middletown Road<br>Lima, PA 19037-0496<br><br>And<br><br>DELAWARE COUNTY<br>201 West Front Street<br>Media, PA 19063<br><br>*Defendants* | Case No.<br><br><br><br>**CIVIL ACTION<br>COMPLAINT**<br><br>JURY TRIAL DEMANDED |

## CIVIL ACTION COMPLAINT

Plaintiffs, Christopher Beaty, Jr. and Nichole Garcia, Co-Administrators of the Estate of Christopher David Beaty, Deceased, by and through their undersigned Counsel, hereby files the following Complaint, and avers as follows:

## PARTIES

1. Plaintiff, Christopher Beaty, Jr., is an adult individual residing at 903 Stanbridge Rd., Drexel Hill, PA 19026.

2. Christopher Beaty, Jr. is the son of Christopher David Beaty, deceased (hereinafter "Decedent").

3. Plaintiff, Nichole Garcia, is an adult individual residing at 2951 Pennview Ave., Broomall, PA 19008.

4. Nichole Garcia is the daughter of Decedent.

5. Plaintiffs were appointed Co-Administrators of the Estate of the Decedent on October 27, 2020, by the Register of Wills of the County of Delaware, Pennsylvania. *A copy of the Certificate of Grant of Letters of Administration is attached hereto as Exhibit "A."*

6. Plaintiffs bring this action as the personal representatives of the Decedent on his own behalf and on behalf of all those entitled by law to recover damages for the wrongful death of Decedent.

7. Defendant, Fair Acres Geriatric Center (hereinafter "Fair Acres"), is upon information and belief, licensed by the Commonwealth of Pennsylvania to provide nursing home care and owned and operated by Delaware County, Pennsylvania, and as such is acting under the color of state law, with a primary business address of 340 North Middletown Road, Lima, PA 19037.

8. At all times material hereto, Fair Acres operated a long-term care nursing facility as that term is defined in 35 P.S. § 448.802(a) *et seq.*, which "promote[s] the public health and welfare through the establishment and enforcement of regulations setting minim standards in the construction, maintenance, and operation of health care facilities.

9. At all relevant times, Fair Acres operated as a "skilled nursing facility" as defined in Title XVIII of the Social Security Act, 42 U.S.C. §1395i-3 (Medicare) and as a "nursing facility" as defined by in Title XIX of the Social Security Act, 42 U.S.C. §1396r (Medicaid).

10. At all times material hereto, Defendant Fair Acres was a licensed "Health Care Providers" as that term is defined in 40 P.S. 1303.503.

11. As a "health care provider" under 40 P.S. 1303.503, Fair Acres is a "licensed professional as defined by Pennsylvania Rule of Civil Procedure 1042.1, and Plaintiff is asserting professional liability claims against Defendants.

12. At all times relevant hereto, Fair Acres was acting independently, and by and through its authorized agents, servants and employees acting within the course and scope of their employment.

13. Defendant, County of Delaware, with its offices at the address of 201 West Front Street, Media, PA 19063, owned and, through its County Board of Institutional Management, operated Fair Acres, and is therefore liable to Plaintiff for civil rights violations that took place at Fair Acres.

## JURISDICTION AND VENUE

14. The instant case asserts wrongful death and survival actions for Deprivation of Civil Rights Enforceable via 42 U.S.C. §1983.

15. Accordingly, jurisdiction is proper in this forum because this matter arises under federal law and presents a federal question pursuant to 28 U.S.C. § 1331.

16. Further, jurisdiction is proper for the entire civil action as the additional claims presented by Plaintiff are intricately related to the claims in this action presenting a federal question that they form part of the same case and/or controversy in accordance with 28 U.S.C. § 1367.

17. Venue is appropriate in the Eastern District of Pennsylvania pursuant to 28 U.S.C. § 1391(b)(2) as a substantial part of the events or omissions giving rise to the claim occurred in this judicial district.

## NATURE OF THE CASE

18. At all times material hereto, Defendant Fair Acres held itself out to the public, in general, and to Plaintiffs herein, as a professional in the field of adult nursing care, with the

expertise necessary to maintain the health and safety of elderly residents such as the Plaintiffs' Decedent.

19. At all times material hereto, Defendant, Fair Acres, and its employees and agents, had a duty to ensure that all persons providing care within the Fair Acres facility were competent to provide that care.

20. Defendant, Fair Acres, and its agents and employees, had a duty to formulate, adopt and enforce adequate rules and policies to ensure quality care for residents, including Plaintiffs' Decedent.

21. At all times material hereto, Defendant, Fair Acres, and its agents and employees owed a duty not to violate the federally protected legal rights of any resident, including Decedent Christopher David Beaty, and had a duty to comply with all provisions of the Omnibus Budget Reconciliation Act of 1987/Federal Nursing Home Reform Act, 42 U.S.C. § 1396r, 1396a(w) at incorporated by 42 U.S.C. § 1396(r) and the implementing regulations found at 42 C.F.R. § 483, et seq.

22. The above noted statutes and regulations are designed and intended to protect persons such as Decedent Christopher David Beaty against the negligent, grossly negligent, reckless, and wanton care he encountered and the harm he suffered while residing at Fair Acres.

23. Defendant's derogation of its regulatory and statutory responsibilities caused Christopher David Beaty's death.

## **FACTS**

24. As of January 1, 2020, Decedent Christopher David Beaty had been a resident of Fair Acres for approximately 15 years.

25.  As a resident of Defendants' facility, Decedent Christopher David Beaty was in the care, custody, and control of Defendants.

26.  In early 2020, COVID-19, a highly contagious and deadly respiratory virus, began emerging as a nationwide and worldwide health threat.

27.  Upon information and belief, due to comorbidities and health history, Decedent was at a heightened risk of serious illness, health complications, and death as a result of COVID-19.

28.  On March 11, 2020, the World Health Organization officially declared COVID-19 a global pandemic.

29.  In March of 2020, COVID-19 spread throughout Pennsylvania, prompting a statewide Stay-at-Home Order and restrictive guidelines from the Governor's Office and Department of Health.

30.  On or about March 13, 2020, due to the risks and dangers of COVID-19, Defendant Fair Acres prohibited visitor access to its facility.

31.  In late May of 2020, due to the known risks and dangers of COVID-19 and over 2 months after the facility's lockdown, Fair Acres finally began preventative Covid testing of its residents, including Decedent.

32.  Up to including June 1, 2020 the Decedent as well as other residents of Fair Acres' facility had been permitted to leave their rooms and intermixed with other residents and staff without adequate safety precautions.

33.  On or about May 29, 2020, Decedent and his roommate received a COVID-19 test.

34.  On or about June 1, 2020, Decedent contacted Plaintiffs and indicated his roommate was sick and exhibiting symptoms of COVID-19.

35. That same day, Plaintiffs contacted Fair Acres and were informed multiple residents were sick.

36. Although Decedent's roommate exhibited symptoms of COVID-19, while Decedent and his roommate's Covid tests were pending, they remained in the same room and in close proximity to each other.

37. Later on June 1, 2020, Fair Acres contacted Plaintiffs and indicated that Decedent had contracted a low-grade fever, which can be a symptom of COVID-19.

38. On or about June 2, 2020, while Decedent's May 29th Covid test was negative, Decedent's roommate's tested positive for COVID-19 and was moved from Decedent's room.

39. Prior to his roommate's removal, Decedent had been continuously and repeatedly exposed to a COVID-19 positive individual that was exhibiting known symptoms of COVID-19.

40. Decedent continued to exhibit symptoms of COVID-19, including low grade fever and respiratory distress.

41. After at least 2 days of exposure with, and close proximity to, a Covid positive resident, Decedent was given another Covid test.

42. On or about June 3, 2020, Decedent's health status continued to decline and continued exhibiting signs and symptoms of COVID-19, including low pulse oxygen levels and shortness of breath.

43. On June 3, 2020, Decedent was admitted to Riddle Memorial Hospital, tested positive for COVID-19, and was diagnosed with pneumonia, acute respiratory failure, wheezing, urinary tract infection, flaccid hemiplegia, and shortness of breath. *See Decedent's Discharge Summary attached hereto as Exhibit "B."*

44. Decedent Christopher David Beaty passed away on June 6, 2020 due to sequalae of COVID-19.

45. During his residency at Fair Acres, Decedent was dependent on its agents and employees, to assure that his health and safety were in accordance with acceptable medical practice.

46. Defendants, including their employees and agents, provided care and treatment to Decedent, and all of the alleged negligent, grossly negligent, reckless, and wanton acts, omissions, and occurrences, herein described, were performed by the Defendant's employees and agents within the course and scope of their agency and employment with defendants and in furtherance of Defendant's business.

47. Defendants had a duty to employ an adequate number of properly trained medical staff who were qualified to properly care for the residents at Fair Acres, including Plaintiff's Decedent.

48. Defendants, including their agents and employees, had a duty to assure that Decedent's health and safety were in accordance with acceptable medical practice.

49. Defendants, including their agents and employees failed, refused and/or neglected to perform the duties to provide reasonable and adequate health care to and for Decedent.

50. The care provided by Defendants to Decedent in 2020 was inadequate, inaccurate and/or incomplete.

51. Defendants, including their agents and employees failed to take affirmative action to protect the health, safety, and well-being of its residents, including the Decedent by:

    a. Failing to have sufficient staff or equipment (PPE);

b. Failing to have polices in place to protect its residents from COVID-19, including Decedent;

c. Failing to follow resident care policies;

d. Failing adopt and enforce safe practices for the identification, testing, and isolation of residents with signs and symptoms of COVID-19;

e. Failing to follow Center for Disease Control guidelines; and/or

f. Failure to maintain infection control on the premises.

52. Defendants, including their agents and employees, exhibited a pattern and practice of failure to protect its residents, including the Decedent, from COVID-19:

a. Failing to have sufficient staff or equipment (PPE);

b. Failing to have polices in place to protect its residents from COVID-19, including Decedent;

c. Failing to follow resident care policies;

d. Failing adopt and enforce safe practices for the identification, testing, and isolation of residents with signs and symptoms of COVID-19;

e. Failing to follow Center for Disease Control guidelines; and/or

f. Failure to maintain infection control on the premises.

53. As a result of Defendants' negligent, grossly negligent, reckless, and outrageous conduct, COVID-19 spread throughout the entire Fair Acres Facility in a matter of a couple weeks.

54. By letter dated May 11, 2020, Defendants informed Plaintiffs that the facility had 104 confirmed resident cases of COVID-19, 27 residents presumed positive for COVID-19, and 53

confirmed employee cases of COVID-19. *See May 11, 2020 letter attached hereto as Exhibit "C."*

55.  In less than one month, by letter dated June 4, 2020, Defendants informed Plaintiffs that the facility now had 222 confirmed resident cases and 94 confirmed employee cases of COVID-19. *See June 4, 2020 letter attached hereto as Exhibit "D."*

56.  According to the Pennsylvania Department of Health, Defendant totaled 293 confirmed resident cases of COVID-19, 97 resident deaths as a result of COVID-19, and 211 confirmed employee cases of COVID-19.[1]

57.  Upon information and belief, a June 18, 2020 inspection of Defendant's premises revealed a number of Defendant's staff members and/or employees not in compliance with COVID-19 infection prevention policies and Center for Disease Control Guidelines.

58. As a result of Defendants' conduct, Decedent contracted COVID-19 and died.

59. As a further result of Defendants' conduct, Decedent has been prevented from attending to his usual and daily activities and avocations to his great detriment and loss.

60. As a further result of Defendants', Decedent has suffered the loss of life's pleasures to his great detriment and loss.

## CLAIMS FOR RELIEF COMMON TO ALL COUNTS

61.  Plaintiffs hereby incorporate the preceding paragraphs by reference as though fully set forth herein at length.

62.  Defendants are an agent of the Commonwealth of Pennsylvania, and at all times relevant to this Complaint, acting under color of state law.

---

[1] Statistics current per health.pa.gov as of March 22, 2021.

63.  Defendants exercised control over all aspects of the operation and management of the Fair Acres facility prior to and during the COVID-19 outbreak at the Facility, including, but not limited to: creating, setting, funding, and/or implementing budgets; creating and maintaining business relationships with related parties as defined by the Centers for Medicare and Medicaid Services that resulted in an undercapitalized and understaffed nursing home; hiring and training caregiving staff; monitoring resident acuity levels and staffing sufficiently to meet each resident's needs; admitting and discharging residents to and from the facility; and creating and enforcing written policies and procedures to provide for the safety and well-being of all residents.

64. Each of these managerial and operational functions had a direct impact on the quality of care provided to the Plaintiff's Decedent and other residents in the Fair Acres Facility.

65. Defendants had a duty to act prudently and had a duty to provide reasonable and ordinary care and care services to Plaintiffs' Decedent.

66. Defendants had a duty to provide caregiving staff with sufficient personal protective equipment, sanitation and hygiene products, and medical tools to prevent cross-contamination and the spread of infection to residents and other staff.

67. Defendants had a duty to ensure that all persons providing care within the Fair Acres Facility were competent to provide that care.

68. Defendants had a duty to oversee all persons who practice medicine in the Fair Acres Facility.

69. Defendants had a duty to formulate, adopt, and enforce adequate rules and policies to ensure quality care for residents of the Fair Acres Facility, such as the Plaintiffs' Decedent.

70. Defendants had a duty to ensure that the Fair Acres Facility was sufficiently staffed to meet the needs of its residents.

71. Defendants negligently, grossly negligently, recklessly, willfully, and wantonly breached its duties owed to Plaintiffs' Decedent in the following ways:

    a.   failing to establish and maintain an infection prevention and control program to create a safe, sanitary and comfortable environment and prevent the development and transmission of communicable diseases and infections, namely the transmission of COVID-19;

    b.   failing to establish adequate written standards, policies, and procedures to identify possible communicable diseases in the Fair Acres Facility before the infection could spread to other persons;

    c.   failing to follow an infection prevention and control program that provided a safe, sanitary, and comfortable environment and prevented the development and transmission of communicable diseases and infections, namely the transmission of COVID-19;

    d.   failing to follow written standards, policies, and procedures to identify possible communicable diseases in the Fair Acres Facility which were in place before the infection could spread to other persons;

    e.   failing to establish adequate written standards, policies, and procedures that enumerate when possible incidents of communicable disease or infections should be reported, and who they should be reported to;

    f.   failing to follow written standards, policies, and procedures that enumerate when possible incidents of communicable disease or infections should be reported, and who they should be reported to;

    g.   failing to establish adequate written standards, policies, and procedures for precautions and safeguards to prevent the spread of infection within the Fair Acres Facility;

    h.   failing to follow written standards, policies, and procedures that were in place for precautions and safeguards to prevent the spread of infection within the Fair Acres Facility;

    i.   failing to establish adequate written standards, policies, and procedures for when and how a resident with a communicable infection should be isolated;

j.   failing to follow standards, policies, and procedures that were in place for when and how a resident with a communicable infection should be isolated;

k.   failing to establish adequate written standards, policies, and procedures for when and how a staff member with exposure to a communicable infection should be prevented from exposing residents and other staff;

l.   failing to follow written standards, policies, and procedures that were in place for when and how a staff member with exposure to a communicable infection should be prevented from exposing residents and other staff;

m.   failing to provide adequate training and education to caregiving staff on infection prevention and control;

n.   failing to ensure all caregiving staff members attended appropriate trainings and were properly trained on infection prevention and control, and by failing to ensure all staff were properly re-educated as required;

o.   failing to timely, accurately and/or truthfully communicate information to residents and their families about the spread of COVID-19 within the Fair Acres Facility, so as to allow them to make informed decisions for the wellbeing of their loved ones in the Fair Acres Facility

p.   failing to communicate with residents' family members and physicians;

q.   failing to accurately and/or truthfully communicate with other medical providers and the Pennsylvania Department of Health about the spread of COVID-19 within the Fair Acres Facility

r.   failing to request assistance from the proper authorities when it became apparent that COVID-19 was quickly spreading throughout the Fair Acres Facility;

s.   failing to create and implement a plan to effectively isolate COVID-19 positive residents to avoid exposing residents who were not COVID-positive; and

t.   failing to routinely test residents and staff for COVID-19 so as to properly separate and isolate infected individuals from those who had not been exposed to the virus;

u.   allowing COVID-19 infected staff to care for residents;

v.   failing to ensure that proper social distancing was maintained by residents and staff;

w.   failing to provide adequate supplies for residents and staff to wash their hands to prevent the spread of infection;

x.   failing to ensure that all employees washed their hands regularly;

y.   failing to ensure all employees wore gloves and changed gloves when appropriate;

z.   failing to ensure that all employees had access to sufficient Personal Protective Equipment;

aa.  failing to ensure that all staff was trained in the proper use of PPE;

bb.  failing to ensure that all staff used PPE properly;

cc.  failing to ensure all employees were trained on, and followed, guidelines for sanitizing medical equipment between use;

dd.  understaffing the Fair Acres Facility in order to keep surplus funding as revenue, causing its nursing staff to be unable to meet the needs of residents;

ee.  failing to create a clean and sanitary environment, the lack of which created the potential for cross-contamination and the spread of diseases and infections;

ff.   failing to recognize and appreciate the extreme risk that COVID-19 posed to residents, who—due to age, pre-existing conditions, and living arrangements— were already some of the most vulnerable individuals in our communities; and

gg.  failing to recognize and appreciate the extreme risk that COVID-19 posed to residents after observing the virus's devastating affect specifically in nursing homes during March and April of 2020 when the first wave of COVID-19 was at its worst.

72. At all relevant times, Defendants had a duty to not violate the legal rights of any resident, including Decedent, and had a duty to comply with all provisions of Title 28, Pa. Administrative Code, Chapters 201 (General Operation of Long-Term Care Nursing Facilities) and 211 (Program Standards for Long-Term Care Nursing Facilities) and 42 C.F.R. §483 *et seq.* (Centers for Medicare & Medicaid Services, Department of Health and Human Services Requirements for Long Term Care Facilities).

73. The specific detailed regulatory provisions and statutes create rights which are enforceable pursuant to 42 U.S.C. § 1983, as the language of these regulations and statutory provisions clearly and unambiguously creates those rights.

74. These regulations comprise part of the standard of care that facilities like Fair Acres must provide to its residents.

75. These regulations are designed and intended to protect the interests of skilled nursing and long-term care residents against the hazards Plaintiff's Decedent encountered at Fair Acres and the type of harm and death he suffered—specifically, contracting COVID-19 from other residents and/or staff.

76. The Defendants in derogation of the above statute and regulations, and as a custom and policy, failed to comply with the aforementioned regulations as follows:

    a. failing as an effective governing body to adopt and enforce rules for the health care and safety of the residents, as required by 28 Pa. Code §201.18;

    b. failing to enforce regulations relative to the level of health care and safety of residents, as required by 28 Pa. Code §201.18(e)(1);

    c. failing to conduct ongoing coordinated educational programs for the development and improvement of skills of the facility's personnel, including training related to problems, needs, and rights of the residents, as required by 28 Pa. Code §201.20(a);

    d. failing to conduct in-service training at least annually which includes infection prevention and control, as required by 28 Pa. Code §201.20(c);

    e. failing to adequately train staff in proper implementation of policies and procedures, as required by 28 Pa. Code §201.29(d);

    f. failing to treat Plaintiff's Decedent with consideration, respect, and full recognition of dignity and individuality, as required by 28 Pa. Code § 201.29(j);

    g. failing to report to the appropriate health agencies when a resident developed a reportable disease, as required by 28 Pa. Code §211.1(a);

    h. failing to design and implement resident care policies to ensure Plaintiff's Decedent's total medical needs were met and he was protected from infection, as required by 28 Pa. Code § 211.10(d);

    i. failing to update the Facility's resident care policies as necessary to meet the total medical and psychosocial needs of Fair Acres' residents, as required by 28 Pa. Code §211.10;

j.    failing to provide services by a sufficient number of nursing personnel on a 24-hour basis to provide nursing care to meet the needs of all residents, as required by 28 Pa. Code §211.12;

k.    failing to protect and promote Plaintiff's Decedent's resident rights, as required by 42 C.F.R. §483.10;

l.    failing to treat each resident in a manner and in an environment that promoted maintenance or enhancement of his or her quality of life, as required by 42 C.F.R. §483.10(a)(1);

m.    failing to treat each resident with respect and dignity, as required by 42 C.F.R. §483.10(e);

n.    failing to immediately notify representatives of Plaintiff's Decedent when there were significant changes in his physical statuses, as required by 42 C.F.R. §483.10(g)(14);

o.    failing to provide Plaintiff's Decedent with a safe, clean, comfortable, and homelike environment, as required by 42 C.F.R. §483.10(1);

p.    failing to provide housekeeping and maintenance services necessary to maintain a sanitary, orderly, and comfortable interior, as require by 42 C.F.R. §483.10(i)(2);

q.    failing to conduct a comprehensive assessment of Plaintiff's Decedent after significant changes in their condition, as required by 42 C.F.R. §483.20;

r.    failing to ensure all residents, including Plaintiff's Decedent, received the necessary care and services to attain or maintain the highest practicable qualify of life, including physical, mental, and psychosocial well-being, as required by 42 C.F.R. §483.24;

s.    failing to ensure all residents, including Plaintiff's Decedent, received treatment and care in accordance with professional standards of practice, as required by 42 C.F.R. §483.25;

t.    failing to have sufficient nursing staff with the appropriate competencies and skill sets to provide nursing and related services to assure resident safety and attain or maintain the highest practicable physical, mental, and psychosocial well-being, as determined by resident assessments and individual plans of care and considering

the number, acuity, and diagnoses of the facility's resident population, as required by 42 C.F.R. §483.35;

u.  failing to provide nursing services by sufficient registered nurses on a 24-hour basis to the Plaintiff's Decedent in accordance with their care plans, as required by 42 C.F.R. §483.35(b);

v.  failing to obtain diagnostic services to meet the needs of its residents, as required by 42 C.F.R. §483.50(b), as pled herein;

w.  failing to operate and administer the Fair Acres Facility in a manner that enabled it to use its resources effectively and efficiently to attain or maintain the highest practicable physical, mental, and psychosocial well-being of each resident, as required by 42 C.F.R. §483.70;

x.  failing to operate and provide services in compliance with all applicable Federal, State, and local laws, regulations, and codes, and with accepted professional standards and principles, as required by 42 C.F.R. §483.70;

y.  failing to conduct and document a facility-wide assessment to determine what resources were necessary to care for residents competently during both day-to-day operations and emergencies, to review and update this assessment whenever there was any change that would require a substantial modification to any part of this assessment, and for this assessment to include the care required by the resident population considering the types of diseases and overall acuity present within that population, as required by 42 C.F.R. §483.70(e);

z.  failing to establish and maintain an emergency preparedness plan that meets the requirements of 42 C.F.R. §483.73;

aa. failing to establish and maintain an infection prevention and control program designed to provide a safe, sanitary, and comfortable environment and to help prevent the development and transmission of communicable diseases and infection, as required 42 C.F.R. §483.80;

bb. failing to establish a system for preventing, identifying, reporting, investigating, and controlling infections and communicable diseases for all residents, staff, volunteers, and visitors, as required by 42 C.F.R. §483.80(a)(1);

cc. failing to establish a system which specified standard and transmission-based precautions to be followed to prevent spread of infections, as required by 42 C.F.R. §483.80(a)(2)(iii);

dd. failing to establish a system which specified when and how isolation should be used for a resident, including the type and duration of the isolation, as required by 42 C.F.R. §483.80(a)(2)(iv);

ee. failing to establish a system which specified the circumstances under which the facility must prohibit employees with a communicable disease from direct contact with residents, if direct contract will transmit the disease, as required by 42 C.F.R. §483.80(a)(2)(v);

ff. failing to inform Plaintiff's Decedent and his family of COVID-19 occurrences in the facility, as required by 42 C.F.R. §483.80(g)(3);

gg. failing to provide a safe, functional, sanitary, and comfortable environment to residents, staff, and the public, as required by 42 C.F.R. §483.90;

hh. failing to develop, implement, and maintain an effective training program for all new and existing staff, individuals providing services under a contractual arrangement, and volunteers, as required by 42 C.F.R. §483.95; and

ii. failing to include as part of its infection prevention and control program mandatory training that includes the written standards, policies, and procedures for the program, as required by 42 C.F.R. §483.95(e).

77. As a direct and proximate result of the acts and omissions of Defendants, as set forth above, Fair Acres' staff was less able to contain and control the spread of COVID within the Facility.

78. As a direct and proximate result of Defendants' conduct, including the actionable derogation of its regulatory and statutory responsibilities as above-described, Decedent contracted COVID-19 which cased Decedent to suffer pain, emotional distress, isolation, anxiety, deterioration, debilitation, loss of enjoyment of life, and ultimately death.

79. As a direct and proximate result of Defendants' conduct, including the actionable derogation of its regulatory and statutory responsibilities as above-described, Plaintiff's

Decedent incurred hospital, medical, and nursing expenses to be treated for the COVID-19 virus and its sequelae and effects.

80. As a direct and proximate result of the Defendants' conduct, including actionable derogation of its regulatory and statutory responsibilities, as set forth herein above, Plaintiffs' Decedent, Christopher David Beaty, was caused to die on June 6, 2020.

## COUNT I - DEPRIVATION OF CIVIL RIGHTS
## ENFORCEABLE BY 42 U.S.C. §1983 - WRONGFUL DEATH
## PLAINTIFFS v. DEFENDANTS, FAIR ACRES GERIATRIC CENTER AND
## COUNTY OF DELAWARE

81. Plaintiffs hereby incorporate the preceding paragraphs by reference as though fully set forth herein at length.

82. As a direct and proximate result of the negligent acts and/or omissions of the Defendants, Plaintiffs' Decedent, Christopher David Beaty, was caused to die on June 6, 2020.

83. Plaintiffs, Christopher Beaty, Jr. and Nichole Garcia have been duly appointed as personal representatives by the Register of Wills of Delaware County, Pennsylvania.

84. This civil action is brought pursuant to the Wrongful Death Act, 42 Pa.C.S. §8301 *et seq.*, Rule 2201 of the Pennsylvania Rules of Civil Procedure, and 42 U.S.C. § 1983.

85. Plaintiffs' Decedent Christopher David Beaty did not bring any other personal injury action during his lifetime for injuries described herein against Defendants.

86. The names and addresses of all persons who may be legally entitled to recover wrongful death damages for the death of Decedent and their relationship to Decedent are as follows:

    a. Christopher Beaty, Jr., 903 Stanbridge Rd, Drexel Hill, PA 19026 (Son);

    b. Nichole Garcia, 2951 Pennview Ave., Broomall, PA 19008 (Daughter);

    c. Barbara Beaty, 2951 Pennview Ave, Broomall, PA 19008 (Wife);

    d. Samantha Beaty, 4027 Gideon Dr., Brookhaven, PA 19015 (Daughter);

e.   Bernadette Egge, 1136 Harding Dr., Havertown, PA 19083 (Daughter).

87. This civil action is brought to recover on behalf of the Estate of Christopher David Beaty all damages legally recoverable, including an award of reasonable counsel fees pursuant to 42 U.S.C. § 1988.

88. As a result of the death of Plaintiffs' Decedent, Christopher David Beaty, the above identified beneficiaries have suffered the loss of services of Plaintiff's Decedent, loss of financial support and/or contribution which Plaintiff's Decedent would have provided in the future and loss of companionship, services, comfort, guidance, solace, and society.

89. As a direct and proximate result of the death of Plaintiff's Decedent, Plaintiff has suffered pecuniary losses and incurred funeral, medical, burial, and administration expenses.

**WHEREFORE**, the Plaintiffs, Christopher Beaty Jr. and Nichole Garcia, Co-Administrators of the Estate of Christopher David Beaty, Deceased, demands compensatory and consequential damages from Defendants, Fair Acres Geriatric Center and County of Delaware, in excess of Seventy-Five Thousand Dollars ($75,000.00), plus interest, costs of suit, attorneys' fees and such other just and equitable relief as this Honorable Court deems proper.

### COUNT II - DEPRIVATION OF CIVIL RIGHTS ENFORCEABLE BY 42 U.S.C. §1983 - SURVIVAL PLAINTIFFS v. DEFENDANTS, FAIR ACRES GERIATRIC CENTER AND COUNTY OF DELAWARE

90.      Plaintiff incorporates the preceding paragraphs by reference as though fully set forth herein at length.

91. In their capacity as Co-Administrators of the Estate of Christopher David Beaty, Plaintiffs, Christopher Beaty, Jr. and Nichole Garcia bring this civil action pursuant to the Pennsylvania Survivor Act, 42 Pa.C.S. §8302 *et seq* and 42 U.S.C. § 1983.

92. This civil action is brought to recover on behalf of the Estate of Christopher David Beaty, all damages legally recoverable, including an award of reasonable counsel fees pursuant to 42 U.S.C. § 1988.

93. As a direct and proximate result of the Defendants' actionable derogation of its regulatory and statutory responsibilities, as set forth herein above, Plaintiffs' Decedent died on June 6, 2020.

94. As a direct and proximate result of Defendants' actionable derogation of its regulatory and statutory responsibilities, as set forth herein above, Plaintiffs' Decedent endured great physical pain and suffering prior to his death.

95. Plaintiffs, Christopher Beaty, Jr. and Nichole Garcia, Co-Administrators of the Estate of Christopher David Beaty, claim on behalf of the Estate, damages for his pain and suffering and all such other pecuniary losses resulting from the death of Decedent.

**WHEREFORE**, the Plaintiffs, Christopher Beaty Jr. and Nichole Garcia, Co-Administrators of the Estate of Christopher David Beaty, Deceased, demands compensatory and consequential damages from Defendants, Fair Acres Geriatric Center and County of Delaware, in excess of Seventy-Five Thousand Dollars ($75,000.00), plus interest, costs of suit, attorneys' fees and such other just and equitable relief as this Honorable Court deems proper.

## **JURY DEMAND**

Plaintiffs demand a trial by jury on all issues so triable.

**ANAPOL WEISS**

BY: ___*s/Stephen J. Pokiniewski*_____
STEPHEN J. POKINIEWSKI, JR., ESQ
PA Attorney ID # 45186
130 N 18th St, Ste 1600
Philadelphia, PA 19103
spokiniewski@anapolweiss.com
Date:  April 5, 2021                      215-735-2435

# EXHIBIT "A"



# *Certificate of Grant of Letters of Administration*

**ESTATE NO:**      **2320-2123**

**ESTATE OF:**      **CHRISTOPHER DAVID BEATY, Deceased**

**SOC SEC NO:**      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

      **WHEREAS, CHRISTOPHER DAVID BEATY,** late of **Media Borough,** Delaware County, PA, who died on Jun 06, 2020, and;

      **WHEREAS,** the Grant of Letters of Administration is required for the administration of the estate.

      **THEREFORE, I,** Rachel Ezzell Berry, Register of Wills in and for said county, hereby certify that I have this day granted LETTERS OF ADMINISTRATION to **CHRISTOPHER D. BEATY JR and (BERNADETTE EGGE, BARBARA BEATY AND SAMANTHA BEATY HAVING RENOUNCED)NICHOLE H. GARCIA** who has duly qualified as **Administrators** and has agreed to administer the estate according to law, all of which fully appears of record in my office in the Delaware County Government Center, Media, Pennsylvania.

      **IN TESTIMONY WHEREOF,** I have here unto set my hand and affixed the seal of my office on **October 27th, 2020.**



Rachel Ezzell Berry
Register of Wills & Clerk of Orphans' Court

# EXHIBIT "B"


**Main Line Health®**

## Discharge Summary - Encounter Notes (continued)

Discharge Summary by Bradburd, Trina L, DO (continued)                    6/6/2020 7:25 PM

| Date of Service | | Author | Author Type | Status | Note Type | File Time |
|---|---|---|---|---|---|---|
| 06/03/20 1835 | Addend | Bradburd, Trina L, DO | Physician | Signed | H&P | 06/03/20 1848 |

Attending Provider: Bradburd, Trina L, DO Attending phys phone: (610)565-7810
Primary Care Physician at Discharge: Bradburd, Trina L, DO 610-565-7810

Admission Date: 6/3/2020    Deceased: 6/6/2020 6:47 pm

### Primary Discharge Diagnosis
Pneumonia due to COVID-19 virus

### Secondary Discharge Diagnosis
**Active Hospital Problems**

| Diagnosis | Date Noted |
|---|---|
| • Pneumonia due to COVID-19 virus | 06/03/2020 |
|    *Priority: High* | |
| • Acute respiratory failure (CMS/HCC) | 06/03/2020 |
|    *Priority: High* | |
| • Wheezing | 06/03/2020 |
|    *Priority: Medium* | |
| • Urinary tract infection | 06/03/2020 |
|    *Priority: Medium* | |
| • Flaccid hemiplegia (CMS/HCC) | 06/03/2020 |
|    *Priority: Low* | |
| • Palliative care by specialist | 06/04/2020 |
| • Debility | 06/04/2020 |
| • Shortness of breath | 06/03/2020 |

Resolved Hospital Problems
No resolved problems to display.

## DETAILS OF HOSPITAL STAY

### Operative Procedures Performed
none

### Consults:
Consult Notes 5/7/2020 to 6/6/2020

| Date of Service | Author | Author Type | Status | Note Type | File Time |
|---|---|---|---|---|---|
| 06/04/20 1747 | Popplewell, Colleen M, CRNP | Nurse Practitioner | Signed | Consults | 06/04/20 1804 |
| 06/04/20 1240 | Wolfe, Sarah | Registered | Signed | Consults | 06/04/20 1243 |

# EXHIBIT "C"



**COUNTY OF DELAWARE**

Board of Institutional Management
FAIR ACRES GERIATRIC CENTER
340 North Middletown Road
P.O. Box 496
Lima, Pennsylvania 19037-0496

**Fair Acres**

COUNCIL
BRIAN ZIDEK
CHAIRMAN

DR. MONICA TAYLOR
VICE CHAIRMAN

KEVIN M. MADDEN
ELAINE PAUL SCHAEFER
CHRISTINE REUTHER

SOCIAL SERVICES DEPARTMENT
PHONE (610) 891-5743

PERFORMANCE IMPROVEMENT & INFECTION CONTROL
PHONE (610) 891-5962

WILLIAM D'AMICO
ADMINISTRATOR

JAMES F. BONNER, MD
MEDICAL DIRECTOR

May 11, 2020

To Family Members or Responsible Parties:

Fair Acres Geriatric Center continues to follow the Department of Health and CDC recommendations to reduce the spread of COVID-19. We continue to experience positive cases of COVID-19. Cumulative numbers will now be reported for residents and employees who have been positively identified and for those who have been identified as "presumed" positive based on their symptoms. As of May 11, 2020, we have 104 confirmed resident cases of COVID-19 and 27 residents identified as "presumed" positive. Several of these residents have experienced a full recovery. We have 53 confirmed employee cases of COVID-19. The residents' health and safety remains our number one priority. These cumulative numbers will be updated regularly.

The Nursing staff continues active monitoring of the residents for signs and symptoms of COVID-19. Monitoring of symptoms for staff is made available daily. Visitation continues to be restricted for those considered to be non-essential.

For additional information regarding COVID-19, please refer to Chester County's website; chesco.org. Please contact the Social Services Department with any questions and/or concerns.

Sincerely,

*Lynn Powell, RN*

Lynn Powell, RN
Fair Acres Infection Preventionist

# EXHIBIT "D"



# COUNTY OF DELAWARE

Board of Institutional Management
FAIR ACRES GERIATRIC CENTER
340 North Middletown Road
P.O. Box 496
Lima, Pennsylvania 19037-0496

**COUNCIL**
BRIAN ZIDEK
CHAIRMAN

DR. MONICA TAYLOR
VICE CHAIRMAN

KEVIN M. MADDEN
ELAINE PAUL SCHAEFER
CHRISTINE REUTHER

SOCIAL SERVICES DEPARTMENT
PHONE (610) 891-5743

PERFORMANCE IMPROVEMENT & INFECTION CONTROL
PHONE (610) 891-5962

**Fair Acres**

WILLIAM D'AMICO
ADMINISTRATOR

JAMES F. BONNER, MD
MEDICAL DIRECTOR

June 4, 2020

To Family Members or Responsible Parties:

Fair Acres Geriatric Center continues to follow the Department of Health and CDC recommendations to reduce the spread of COVID-19. We have completed the first round of facility testing to identify appropriate placement for residents. We will continue with unit-based testing to identify those residents who could be potential asymptomatic (without symptoms) carriers. We feel this action is vital to help prevent further spread of this virus. We do expect to see a rise in our numbers as a result of increased testing. We will also see a rise in resident room and/or unit changes based on future test results. Future room and unit changes will be considered following the resolution of this pandemic. Cumulative numbers will continue to be reported for residents and employees who have been positively identified. As of June 4, 2020, we have had a total of 222 confirmed resident cases - this is a cumulative number which represents both active and recovered cases; this number also includes many residents who were, and remain, without symptoms. The Nursing staff continues active monitoring of the residents for signs and symptoms of COVID-19. The residents' health and safety remains our number one priority.

At this time, we have had a total of 94 confirmed employee cases. This number also includes many employees who were, and remain, without symptoms. Monitoring of employee symptoms, and testing, continues daily. Visitation continues to be restricted for those considered to be non-essential.

For additional information regarding COVID-19, please refer to Chester County's website; chesco.org. Please contact the Social Services Department with any questions and/or concerns.

Sincerely,

*Lynn Powell, RN*

Lynn Powell, RN
Fair Acres Infection Preventionist