**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| CHRISTOPHER BEATY, JR. and NICHOLE GARCIA, as Co-Administrators of the Estate of CHRISTOPHER DAVID BEATY, deceased, and in their own right, | CIVIL ACTION - LAW |
| *Plaintiffs*, | Docket No.  2:21-cv-01617 |
| v. | |
| DELAWARE COUNTY and FAIR ACRES GERIATRIC CENTER, | **Jury Trial Demanded** |
| *Defendants.* | |

**BRIEF IN SUPPORT OF THE MOTION TO DISMISS PLAINTIFFS' COMPLAINT PURSUANT TO FED. R. CIV. P. RULES 12(b)(6) and 12(b)(1) OF DEFENDANT, <u>DELAWARE COUNTY D/B/A FAIR ACRES GERIATRIC CENTER</u>**

BURNS WHITE LLC

William J. Mundy, Esquire
PA I.D. No. 57679
wjmundy@burnswhite.com

Brittany A. Kane, Esquire
PA I.D. No. 328136
bakane@burnswhite.com

1001 Conshohocken State Road, 1-515
West Conshohocken, PA 19428
(484) 567-5700

*Counsel for Defendant, Delaware County
d/b/a Fair Acres Geriatric Center*

FILED:  June 7, 2021

## <u>TABLE OF CONTENTS</u>

I.     INTRODUCTION……………………………………………………………1

II.    FACTUAL AND PROCEDURAL HISTORY ................................................. 2

III.   LEGAL STANDARD ...................................................................................... 4

   A.   **RULE 12(b)(6) FAILURE TO STATE A CLAIM UPON WHICH RELIEF MAY BE GRANTED** ........................................................................ 4

   B.   **RULE 12(b)(1) FOR LACK OF SUBJECT MATTER JURISDICTION** .................. 5

IV.    LEGAL ARGUMENT ..................................................................................... 6

   A.   **MOTION TO DISMISS PLAINTIFFS' COMPLAINT BASED UPON MOVING DEFENDANT'S IMMUNITY UNDER THE PUBLIC READINESS AND EMERGENCY PREPAREDNESS ACT** ........................................ 6

     i.    **Introduction to Immunity Under the PREP Act** ................................. 6

     ii.   **Moving Defendant is a "Covered Person" within the Meaning of the PREP Act** 7

     iii.  **Plaintiffs' Allegations Relate to Moving Defendant's Use of Recommended Activities/Covered Countermeasures Under the PREP Act** ................................. 10

     iv.   **Moving Defendant Obtained the Covered Countermeasures through a "Specified Means of Distribution"** ............................................................. 12

     v.    **The PREP Act Preempts Plaintiffs' § 1983 Claims** ................................. 13

   B.   **MOTION TO DISMISS ANY AND ALL OF PLAINTIFFS' CLAIMS OF WILLFUL MISCONDUCT FOR INSUFFICIENCY IN THEIR PLEADING** ....... 14

   C.   **MOTION TO DISMISS PLAINTIFFS' COMPLAINT FOR FAILURE TO EXHAUST ADMINISTRATIVE REMEDIES** ............................................. 15

   D.   **MOTION TO DISMISS COUNTS I AND II OF PLAINTIFFS' COMPLAINT PURSUANT TO FED. R. CIV. P. 12(b)(6) AS PLAINTIFFS HAVE FAILED TO ESTABLISH A VIOLATION OF 42 U.S.C. § 1983 BECAUSE PLAINTIFF HAS FAILED TO ESTABLISH THAT ANY STATUTE CITED IN PLAINTIFFS' COMPLAINT CONFERS AN ENFORCEABLE INDIVIDUAL RIGHT** ............... 16

     i.    **Pursuant to the First Blessing Factor, Congress Did Not Intend the Provision in Question to Confer an Individual Right** ................................. 19

     ii.   **Pursuant to the Second Blessing Factor, the Rights Plaintiffs Assert are Conferred by the FNHRA are so Vague and Amorphous as to Strain Judicial Competence in Application** ................................. 21

     iii.  **Pursuant to the Third Blessing Factor, the FNHRA Unambiguously Binds the States Pursuant to the Spending Clause, and Therefore Cannot Confer an Individual Right** ................................. 22

     iv.   **Pursuant to Gonzaga, the FNHRA is Not Phrased in Terms of the Persons Benefitted, but Rather in Terms of the Regulated Class** ................................. 22

i

      **v.**    **Congress has Impliedly Foreclosed Recourse by Creating a Comprehensive Enforcement Scheme that is Incompatible with Enforcement under § 1983**...... 23

  **E.**    **MOTION TO DISMISS COUNTS I AND II OF PLAINTIFFS' COMPLAINT PURSUANT TO FED. R. CIV. P. 12(b)(6) AS PLAINTIFFS HAVE FAILED TO ADEQUATELY PLEAD FACTS IN SUPPORT OF A CAUSE OF ACTION PREDICATED UPON 42 U.S.C. § 1983**................................................................ 25

    **i.**    **Plaintiffs have Failed to Establish a Violation of 42 U.S.C. § 1983 Because Plaintiffs have Failed to Identify an Enforceable Individual Right Under the FNHRA**.................................................................................................................. 28

    **ii.**    **Plaintiffs have Failed to Establish a Violation of 42 U.S.C. § 1983 Because Plaintiffs have Failed to Adequately Plead an Official Custom or Policy that Caused a Violation of the Decedent's Civil Rights** ................................. 29

    **iii.** **Plaintiffs have Failed to Establish a Violation of 42 U.S.C. § 1983 Because Plaintiffs Have Failed to Adequately Plead that any State Actor Acted with Deliberate Indifference to the Decedent's Civil Rights**............................... 31

  **F.**    **MOTION TO DISMISS COUNT I OF PLAINTIFFS' COMPLAINT AS NO SEPARATE CAUSE OF ACTION EXISTS FOR WRONGFUL DEATH DAMAGES PURSUANT TO § 1983 WHERE PLAINTIFFS' ARE THE ADMINISTRATORS OF THE ESTATE AND HAVE NO STANDING PREDICATED UPON THE DECEDENT'S RIGHTS** ............................... 33

**V.**   **CONCLUSION** .......................................................................................... 34

## TABLE OF AUTHORITIES

**CASES**

Alfaro Motors, Inc. v. Ward,
   814 F.2d 883 (2d Cir. 1987)..................................................................................... 25
Arce v. Walker,
   139 F.3d 329 (2d Cir. 1998)..................................................................................... 25
Ashcroft v. Iqbal,
   556 U.S. 662 (2009).................................................................................................. 5
Baum v. Northern Dutchess Hosp.,
   764 F. Supp. 2d 410 (N.D. N.Y. 2011) ............................................................ 17, 19
Bd. of Cty. Comm'rs of Bryan Cty. v. Brown,
   520 U.S. 397 (1997)................................................................................................ 27
Bell Atl. Corp. v. Twombly,
   550 U.S. 544 (2007).................................................................................................. 5
Black v. Stephens,
   662 F.2d 181 (3d Cir. 1981)..................................................................................... 30
Blessing v. Freestone,
   520 U.S. 329 (1997)......................................................................................... passim
Brady v. May,
   2005 WL 3560809 (W.D. Pa. Dec. 28, 2005).......................................................... 15
Cardio-Med. Assoc. v. Crozer-Chester Med. Ctr.,
   721 F.2d 68 (3d Cir. 1985)........................................................................................ 6
Colburn v. Upper Darby Township,
   838 F.2d 667 (3d Cir. 1988)..................................................................................... 25
Colon v. Ramirez,
   913 F. Supp. 112 (D.P.R. 1996)......................................................................... 27, 32
Duncan v. Johnson-Mathers Health Care, Inc.,
   2010 WL 3000718 (E.D. Ky. July 28, 2010)........................................................... 18
Fiers v. La Crosse County,
   132 F. Supp. 3d 1111 (W.D. Wisc. 2015)................................................................ 17
Garcia v. Welltower OpCo Group,
   --- F.Supp.3d ---, 2021 WL 492581 (C.D. Cal. Feb. 10, 2021) ......................... 12, 14
Gonzaga Univ. v. Doe,
   536 U.S. 273 (2002)................................................................................................ 18
Gonzaga University v. Doe,
   536 U.S. 273 (2002).................................................................................. 16, 19, 20, 22
Grammer v. John J. Kane Reg'l Ctrs. – Glen Hazel,
   570 F.3d 520 (3d Cir. 2009).......................................................................... passim
Hawkins v. County of Bent, Colo.,
   800 F. Supp. 2d 1162 (D. Colo. 2011)....................................................... 17, 19, 20, 23
James v. Board of Curators of the University of Missouri,
   2011 WL 147910 (E.D. Mo. Jan. 18, 2011) ............................................................ 17
Kalan v. Health Center Commission of Orange County, Virginia,
   198 F. Supp. 3d 636 (W.D. Va. 2016) ..................................................................... 17

Kranson v. Valley Crest Nursing Home,
 755 F.2d 46 (3d Cir. 1985).................................................................29, 30
Losch v. Borough of Parkesburg,
 736 F.2d 903 (3d Cir. 1984)...................................................................30
Massey v. Fair Acres Geriatric Center,
 881 F. Supp. 2d 663 (E.D. Pa. 2012) ......................................................33
McGowan v. Maryland,
 366 U.S. 420 (1961).........................................................................33, 34
Miller v. French,
 530 U.S. 327 (2000)..............................................................................16
Monell v. N.Y. City Dep't of Soc. Servs.,
 436 U.S. 658 (1978).................................................................26, 29, 30
Monroe v. Pape,
 365 U.S. 167 (1961).........................................................................27, 31
Morton v. Mancari,
 417 U.S. 535 (1974)..............................................................................13
Moyer v. Berks Heim Nursing Home,
 2014 WL 1096043 (E.D. Pa. Mar. 20, 2014)...........................................33
N.E. Hub Partners, L.P. v. CNG Transmission Corp.,
 239 F.3d 333 (3d Cir. 2001) ....................................................................6
Natale v. Camden Cty. Corr. Facility,
 318 F.3d 575 (3d. Cir. 2003)...................................................................26
O'Malley v. Brierley,
 477 F.2d 785 (3d Cir. 1973)...............................................................33, 34
Pisano v Extendicare Home s Inc.,
 77 A.3d 651 (Pa. Super. 2013)................................................................33
Reitz v. County of Bucks,
 125 F.3d 139 (3d Cir. 1997)....................................................................27
Robinson v. Fair Acres Geriatric Center,
 2021 WL 672924 (3d Cir. Feb. 22, 2021).............................................25, 28
Romero v. Allstate Insurance,
 2010 WL 4670172 (E.D. Pa. 2010) ...........................................................5
Ross v. Blake,
 135 S.Ct. 1850 (2016).............................................................................16
Sanguinetti v. Avalon Health Care, Inc.,
 2012 WL 2521536 (E.D. Ca. June 28, 2012)............................................17
Simmons v. City of Philadelphia,
 947 F.2d 1042 (3d Cir. 1991)..................................................27, 29, 30, 32
United States v. Raines,
 362 U.S. 17 (1960).............................................................................33, 34
Watson v. Abington Twp.,
 478 F.3d 144 (3d Cir. 2007)....................................................................30
Williams v. Borough of West Chester, Pennsylvania,
 891 F.2d 458 (3d Cir. 1989)....................................................................27
Youse v. Carlucci,
 867 F. Supp. 317 (1994) .........................................................................25

## STATUTES

§ 247d-6d(c)(3) ................................................................................................... 14
§ 247d-6d(e)(1) ................................................................................................... 15
§ 247d-6d(e)(3)-(4) ............................................................................................. 14
§ 247d-6d(e)(4)(C) .............................................................................................. 15
§ 247d-6e(d)(1) ................................................................................................... 16
28 U.S.C. § 1331 ................................................................................................... 4
42 C.F.R. § 483.1 ................................................................................................. 28
42 U.S.C. § 1396 ................................................................................................. 28
42 U.S.C. § 1396r(b)(2) ....................................................................................... 23
42 U.S.C. § 1396r(b)(3)(A) .................................................................................. 23
42 U.S.C. § 1396r(b)(4)(A) .................................................................................. 23
42 U.S.C. § 1396r(b)(4)(C) .................................................................................. 23
42 U.S.C. § 1396r(c)(1)(A) .................................................................................. 23
42 U.S.C. § 201 ..................................................................................................... 4
42 U.S.C. § 247d-6d(a)(2)(A) ............................................................................... 6
42 U.S.C. §1396r(b)(1)(A) ............................................................................. 21, 23
42 U.S.C. 1396r ...................................................................................... 19, 21, 24
42 U.S.C.A. § 247d-6d(a)(1) ...................................................................... 6, 12, 13
42 U.S.C.A. § 247d-6d(d)(1) ............................................................................... 14
42 U.S.C.A. § 247d-6d(i)(1) ................................................................................ 10
42 U.S.C.A. § 247d-6d(i)(2)(B) ............................................................................. 7
42 U.S.C.A. § 247d-6d(i)(6) .................................................................................. 8
42 U.S.C.A. § 247d-6d(i)(8) .................................................................................. 9
42 U.S.C.A. § 247d-6e(a) .................................................................................... 16
42 U.S.C.A. § 247d-6e(a), (d)(4) ........................................................................ 16
42 U.S.C.A. §§ 247d-6d .................................................................................... 1, 7
42 U.S.C.A. §§ 247d-6d, 247d-6e. ................................................................ 1, 7, 15

## RULES

Fed. R. Civ. P. 12(b)(1) ................................................................ *passim*
Fed. R. Civ. P. 12(b)(6) ................................................................ *passim*

## OTHER AUTHORITIES

151 Cong. Rec. H12264 (daily ed. Dec. 18, 2005) ............................................. 13
85 Fed. Reg. 15202 ......................................................................................... 9, 10
85 Fed. Reg. 15198 (Mar. 17, 2020) ...................................................................... 6
85 Fed. Reg. 15201 ......................................................................................... 9, 10
85 Fed. Reg. 21012 (Apr. 15, 2020) ................................................................... 6, 7
85 Fed. Reg. 35100 (June 8, 2020) ........................................................................ 6
85 Fed. Reg. 52136 (Aug. 24, 2020) ...................................................................... 6
85 Fed. Reg. 79190 (Dec. 9, 2020) ................................................................... 6, 10
85 Fed. Reg. 79197 (Dec. 9, 2020) ...................................................................... 10
85 Fed. Reg. at 15199 .......................................................................................... 8
85 Fed. Reg. at 15200 ........................................................................................ 12

86 Fed. Reg. 10588 (Feb. 22, 2021) .......................................................................... 7
86 Fed. Reg. 14462 (Mar. 16, 2021).......................................................................... 7
86 Fed. Reg. 7872 (Feb. 2, 2021) .............................................................................. 7
86 Fed. Reg. 9516 (Feb. 16, 2021) ............................................................................ 7
H.R. Rep. 100–391(I) (1987)......................................................................... 20, 23, 24

**BRIEF IN SUPPORT OF THE MOTION TO DISMISS PLAINTIFFS' COMPLAINT PURSUANT TO FED. R. CIV. P. RULES 12(b)(6) AND 12(b)(1) OF DEFENDANT, DELAWARE COUNTY D/B/A FAIR ACRES GERIATRIC CENTER**

AND NOW, Defendant, Delaware County d/b/a Fair Acres Geriatric Center (improperly identified as two separate entities) (hereinafter referred to as "Moving Defendant" and/or "Fair Acres"), by and through counsel, Burns White, LLC, file the herein Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(6) and 12(b)(1), and in support thereof files the instant Brief.

## I.    INTRODUCTION

Pursuant to Fed. R. Civ. P. 12(b)(6) Plaintiffs' Complaint should be dismissed, as Plaintiffs' causes of action are barred by Moving Defendant's immunity under the Public Readiness and Emergency Preparedness Act ("PREP Act"), 42 U.S.C.A. §§ 247d-6d, 247d-6e. In an effort to "contain and mitigate" the unprecedented spread of COVID-19 in the United States, the Secretary of Health and Human Services ("HHS") issued a Declaration Under the Public Readiness and Emergency Preparedness Act for Medical Countermeasures Against COVID-19 (hereinafter "Declaration"), extending the Act's liability immunity to certain entities against claims of loss related to the administration of medical countermeasures during the COVID-19 pandemic. Declaration Under the Public Readiness and Emergency Preparedness Act for Medical Countermeasures Against COVID-19, 85 Fed. Reg. 15198 (Mar. 17, 2020), amended by 85 Fed. Reg. 21012 (Apr. 15, 2020), 85 Fed. Reg. 35100 (June 8, 2020), 85 Fed. Reg. 52136 (Aug. 24, 2020), 85 Fed. Reg. 79190 (Dec. 9, 2020), 86 Fed. Reg. 7872 (Feb. 2, 2021), 86 Fed. Reg. 9516 (Feb. 16, 2021), 86 Fed. Reg. 10588 (Feb. 22, 2021), and 86 Fed. Reg. 14462 (Mar. 16, 2021). The Declaration, issued on March 10, 2020, was retroactively effective as of February 4, 2020, and applies to countermeasures administered through October 1, 2024. Id. Since the initial Declaration, the Secretary of HHS has issued several amendments to clarify the applicability of

1

the PREP Act concerning measures taken by providers of skilled nursing services, such as that of Moving Defendant.  It is under this immunity that Moving Defendant seeks dismissal of Plaintiffs' claims for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6), as well as the PREP Act's complete preemption to Plaintiffs' § 1983 claims.

Plaintiffs' claims should further be dismissed under Rules 12(b)(1) and 12(b)(6) for Plaintiffs' failure to exhaust the administrative remedies under the PREP Act.  Moreover, any attempt by Plaintiffs to bring a claim of "willful misconduct" must be dismissed under Rule 12(b)(6) for Plaintiffs' failure to comply with the procedural and pleading requirements of the PREP Act.

Plaintiffs' claims should also be dismissed pursuant to Rule 12(b)(6), as Plaintiffs have failed to state a claim upon which relief may be granted pursuant to 42 U.S.C. § 1983.  Plaintiffs have failed to identify an enforceable individual right, have failed to adequately plead facts in support of the elements of a § 1983 cause of action, and have stated a cause of action at Count I for which Plaintiffs lack standing.

## II.   FACTUAL AND PROCEDURAL HISTORY

On April 6, 2021, Plaintiffs, Christopher D. Beaty, Jr. and Nichole Garcia, individually and a Co-Administrators of the Estate of Christopher David Beaty, filed a complaint in the Eastern District of Pennsylvania sounding in medical malpractice, professional negligence, and asserting federal jurisdiction by way of shoehorning these claims into a § 1983 action.  See ECF Doc. 1.  The majority of Plaintiffs' Complaint reads as a negligence action, including allegations such as Defendants "failed, refused and/or neglected to perform the duties to provide reasonable and adequate health care to and for Decedent[,]" and averring in a multitude of paragraphs various "duties" attributed to Defendants that were allegedly "breached[,]" causing Plaintiffs'

harm.  See id. at ¶¶ 45-71(a)-(gg).  Despite dedicating over thirty (30) paragraphs of Plaintiffs

Complaint to pleading a medical negligence cause of action, Plaintiffs dedicate only four (4)

paragraphs to pleading the basis for a § 1983 cause of action.  See id. ¶¶ 72-76.  Further, these

four (4) paragraphs essentially plead negligence per se, and never identify any alleged specific

individual right that serves as the basis for Plaintiffs' § 1983 claims.  See id.

Plaintiffs allege that the decedent had been a resident of Fair Acres for approximately

fifteen (15) years as of January 1, 2020.  See id. at ¶ 24.  In 2020, COVID-19, a novel and

unprecedented respiratory virus, spread throughout the world – including to the United States.

See id. at ¶¶ 26-27.  By March of 2020, the novel COVID-19 virus had spread to Pennsylvania.

See id.  at ¶ 29.  This spread led to statewide stay-at-home orders, restrictions upon movement,

and constantly changing guidance and protocols in an attempt to mitigate the spread of COVID-

19.  See id.

On March 13, 2020, Fair Acres, pursuant to guidance from the Centers for Disease

Control, mandates from federal, state, and local authorities, and in an effort to respond to the

risks and dangers of COVID-19, prohibited access to the facility for anyone who was not

essential personnel.  See id. at ¶¶ 29-30.  In late May 2020, Fair Acres began conducting

preventative COVID testing on its residents.  See id. at ¶ 30.  On May 29, 2020, the decedent and

his roommate were administered preventative tests for COVID-19.  See id. at ¶ 33.  On June 1,

2020, while these results were still pending, Plaintiffs allege that both the decedent and his

roommate first began exhibiting symptoms of COVID-19 on this date.  See id. at ¶¶ 34-37.

Ultimately, Plaintiffs allege that the decedent remained in the room with his roommate while

their preventative COVID-19 test results were pending, and the decedent was caused to contract

COVID-19 from his roommate.  See id. at ¶¶ 33-41.  The decedent's roommate was promptly

relocated when his test results returned positive on June 2, 2020. See id. at ¶ 38. Plaintiffs

allege that the COVID-19 infection caused the decedent to decline and caused his death on June

6, 2020. See id. at 42-44.

Plaintiffs' Complaint asserts a claim arising under federal law within the meaning of 28

U.S.C. § 1331, more specifically, the Public Readiness and Emergency Preparedness Act ("PREP

Act"), 42 U.S.C. § 201, et seq.

The Complaint asserts civil rights violations related to the COVID-19 diagnosis and

subsequent death while Christopher Beaty resided at Fair Acres Geriatric Center between March

and June 2020 and seeks damages under the Pennsylvania Wrongful Death and Survival Acts. See

ECF Doc. 1. The Complaint includes allegations of improper use of preventative diagnostic

testing, as well as improper and/or inadequate infection control, resource management, policies,

supplies, medical equipment, training and supervision of staff. See generally id. at ¶¶ 50-52, 71,

76.

For the reasons set forth below, Moving Defendant respectfully requests that this

Honorable Court grant the herein request for relief pursuant to Fed. R. Civ. P. 12(b)(1) and

12(b)(6), and enter the attached Proposed Order dismissing Plaintiffs' Complaint, with prejudice,

in its entirety.

## III.   LEGAL STANDARD

### A.     RULE 12(b)(6) FAILURE TO STATE A CLAIM UPON WHICH RELIEF MAY BE GRANTED

For the purposes of a Rule 12(b)(6) motion, this Court must "accept all factual allegations

as true, construe the complaint in the light most favorable to the plaintiff, and determine whether

under any reasonable reading of the complaint, the plaintiff may be entitled to relief." Grammer

v. John J. Kane Reg'l Ctrs. – Glen Hazel, 570 F.3d 520, 523 (3d Cir. 2009).  The United States

Supreme Court has held that "[w]hile a complaint attacked by a Rule 12(b)(6) Motion to Dismiss

does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his

entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the

elements of a cause of action will not do.  Factual allegations must be enough to raise a right to

relief above the speculative level."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)

(citations, quotations, and alterations omitted).

The Supreme Court also found that "[t]o survive a motion to dismiss, a complaint must

contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its

face.'"  Ashcroft v. Iqbal, 556 U.S. 662 (2009).  In other words, the required plausibility standard

"asks for more than a sheer possibility that a defendant has acted unlawfully."  Id.  Additionally,

the United States District Court for the Eastern District of Pennsylvania has recognized that "a

plaintiff's obligation to provide the 'grounds' of his entitlement to relief requires more than

labels and conclusions, and a formulaic recitation of the elements of a cause of action will not

do."  Romero v. Allstate Insurance, 2010 WL 4670172 (E.D. Pa. 2010).

In light of the foregoing standards, Moving Defendants assert herein that all Counts

contained within Plaintiffs' Complaint should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6)

for failure to state claims upon which relief may be granted via § 1983.  See ECF Doc. 1.

## B.      RULE 12(b)(1) FOR LACK OF SUBJECT MATTER JURISDICTION

A motion to dismiss under Rule 12(b)(1) for lack of subject matter jurisdiction may be

either a facial or factual challenge.  A facial challenge attacks the complaint on its face, and

asserts that the complaint does not allege facts sufficient to assert a colorable claim for subject

matter jurisdiction.  Cardio-Med. Assoc. v. Crozer-Chester Med. Ctr., 721 F.2d 68, 75 (3d Cir.

1985).  Thus, the court must review only whether the allegations of the Complaint, when taken

as true, allege facts sufficient to invoke the jurisdiction of the district court.  N.E. Hub Partners,

L.P. v. CNG Transmission Corp., 239 F.3d 333, 341 (3d Cir. 2001).


IV.     **LEGAL ARGUMENT**

   A.    **MOTION TO DISMISS PLAINTIFFS' COMPLAINT BASED UPON
         MOVING DEFENDANT'S IMMUNITY UNDER THE PUBLIC
         READINESS AND EMERGENCY PREPAREDNESS ACT**

         i.      **Introduction to Immunity Under the PREP Act**

Moving Defendant seeks dismissal of the Complaint, with prejudice, pursuant to Fed. R.

Civ. P. 12(b)(6) based upon its immunity under the PREP Act.  The claims asserted in Plaintiffs'

Complaint fall within the broad immunity under the PREP Act, which provides:

> [A] covered person shall be immune from suit and liability under
> Federal and State law with respect to claims for loss caused by,
> arising out of, relating to, or resulting from the administration to or
> the use by an individual of a covered countermeasure if a declaration
> under subsection (b) has been issued with respect to such
> countermeasure.

42 U.S.C.A. § 247d-6d(a)(1).

Moving Defendant notes preliminarily that Plaintiffs have alleged injuries, including

illness, infection and death, which fall squarely within the Act's definition of "loss." 42 U.S.C. §

247d-6d(a)(2)(A).  Further, as previously mentioned, the Secretary of HHS issued a Declaration

on March 10, 2020, to invoke the immunity of the PREP Act related to "recommended

activities" against COVID-19; i.e., the testing, development, distribution, administration and use

of  any covered countermeasures.  Declaration Under the Public Readiness and Emergency

Preparedness Act for Medical Countermeasures Against COVID-19, 85 Fed. Reg. 15198 (Mar.

17, 2020), amended by 85 Fed. Reg. 21012 (Apr. 15, 2020), 85 Fed. Reg. 35100 (June 8, 2020),

85 Fed. Reg. 52136 (Aug. 24, 2020), 85 Fed. Reg. 79190 (Dec. 9, 2020), 86 Fed. Reg. 7872

(Feb. 2, 2021), 86 Fed. Reg. 9516 (Feb. 16, 2021), 86 Fed. Reg. 10588 (Feb. 22, 2021), and 86

Fed. Reg. 14462 (Mar. 16, 2021).  Moreover, Plaintiffs' allegations in and around March to June

2020 fall within the effective time periods of the immunity, which is currently set from February

4, 2020, to October 1, 2024, for all countermeasures other than respiratory devices.  Id.  The

effective period for immunity related to use of covered respiratory devices is currently set from

March 27, 2020, to October 1, 2024.  Amendment to Declaration Under the Public Readiness

and Emergency Preparedness Act for Medical Countermeasures Against COVID–19, 85 Fed.

Reg. 21012 (Apr. 15, 2020).

Therefore, the remaining elements required for Moving Defendant to be subject to the

PREP Act immunity are whether (1) they are a "covered person," (2) they were administering or

using a "covered countermeasure," (3) Plaintiffs' claims arise out of or relate to the

administration or use of said countermeasure(s), and (4) the countermeasure was "obtained

through a particular means of distribution."  42 U.S.C.A. §§ 247d-6d, 247d-6e; 85 Fed. Reg.

15198.

As explained more fully below, Moving Defendant and the alleged activities at issue in

the Complaint meet all of these requirements to be afforded immunity under the PREP Act.

### ii.   Moving Defendant is a "Covered Person" within the Meaning of the PREP Act

The Act defines a "covered person" as a (1) manufacturer of the countermeasure, (2)

distributor of the countermeasure, (3) program planner of the countermeasure, (4) qualified

person who prescribed, administered or dispensed such countermeasure, or (5) an official, agent

or employee of the above. 42 U.S.C.A. § 247d-6d(i)(2)(B).  Moving Defendant, as a skilled

nursing facility, constitutes a "program planner" and "qualified person" within the meaning of

the PREP Act.

### 1.   Moving Defendant is a "Program Planner" Under the PREP Act

The Act defines a "program planner" as a person or entity "who supervised or administered a program with respect to the administration, dispensing, distribution, provision, or use of a security countermeasure or a qualified pandemic or epidemic product, including a person who has established requirements, provided policy guidance, or supplied technical or scientific advice or assistance or provides a facility to administer or use a covered countermeasure in accordance with [the Secretary's Declaration]."  42 U.S.C.A. § 247d-6d(i)(6). The Secretary's Declaration specifies that a community group, private sector employee "or other 'person' can be a program planner when it carries out the described activities."  85 Fed. Reg. at 15199.  Furthermore, the Office of the Secretary confirmed that senior living communities are considered "covered persons", and more specifically "program planners," under the PREP Act. (A copy of the Office of the Secretary, Department of Health & Human Services, Letter dated August 14, 2020, is attached hereto as Exhibit "A").

Finally, on January 8, 2021, the Office of the Secretary of HHS affirmatively stated in an Advisory Opinion that:

> A program planner is someone who is involved in providing or allocating covered countermeasures.  Program planning inherently involves the allocation of resources and when those resources are scarce, some individuals are going to be denied access to them. Therefore, decision-making that leads to the non-use of covered countermeasures by certain individuals is the gist of program planning, and is expressly covered by PREP Act[.]

(A copy of "Advisory Opinion 21-01" is attached hereto as Exhibit "B", at 4).

Therefore, it is undisputed that Moving Defendant, a skilled nursing facility, administers, dispenses, distributes and provides the use of covered countermeasures against COVID-19, and therefore qualifies as a "program planner" within the meaning of the PREP Act.

8

### 2. Moving Defendant is a "Qualified Person" Under the PREP Act

Similarly, Moving Defendant unequivocally constitutes a "qualified person" under the definition of the PREP Act, which includes "a licensed health professional or other individual who is authorized to prescribe, administer, or dispense" countermeasures under the laws of its state. 42 U.S.C.A. § 247d-6d(i)(8).  The Secretary expounded upon this definition in the COVID-19 declaration of March 10, 2020, to include:

> (a) "[a]ny person authorized in accordance with the public health and medical emergency response of the Authority Having Jurisdiction . . . to prescribe, administer, deliver, distribute or dispense the Covered Countermeasures, and their officials, agents, employees, contractors and volunteers, following a Declaration of an emergency;
> (b) any person authorized to prescribe, administer, or dispense the Covered Countermeasures or who is otherwise authorized to perform an activity under an Emergency Use Authorization in accordance with Section 564 of the FD&C Act; and
> (c) any person authorized to prescribe, administer, or dispense Covered Countermeasures in accordance with Section 564A of the FD&C Act.

85 Fed. Reg. at 15201-02.  The Declaration further defined "Authority Having Jurisdiction" as the "public agency or its delegate that has legal responsibility and authority for responding to an incident, based on political or geographical (e.g., city, county, tribal, state, or federal boundary lines) or functional (e.g., law enforcement, public health) range of sphere or authority."  Id. at 15202.

Here, yet again, Moving Defendant falls within this definition of "qualified person."  Defendant is a licensed healthcare provider by the Pennsylvania Department of Health to prescribe, administer and dispense countermeasures related to COVID-19.  As such, Moving Defendant qualifies as a "covered person" entitled to, and protected by, PREP Act immunity.

### iii.    Plaintiffs' Allegations Relate to Moving Defendant's Use of Recommended Activities/Covered Countermeasures Under the PREP Act

The March 10, 2020 Declaration provides immunity under the PREP Act for the "Recommended Activities" undertaken by a covered person, defined as the "manufacture, testing, development, distribution, administration and use of" covered countermeasures.  85 Fed. Reg. 15201.

The Declaration defines "covered countermeasures" against COVID-19 as "any antiviral, any other drug, any biologic, any diagnostic, [or] any other device . . . used to treat, diagnose, cure, prevent, or mitigate COVID-19."  Id. at 15202.  The PREP Act further includes in their definition of "covered countermeasure" any drug, biological product or device authorized for emergency use by the Federal Food, Drug, and Cosmetic Act (FDCA), and any respiratory protective device approved by the National Institute for Occupational Safety and Health (NIOSH). 42 U.S.C.A. § 247d-6d(i)(1).[1]

Moreover, the PREP Act immunity does not only apply to the use of a countermeasure, but also to the non-use of a covered countermeasure in situations when the resource is limited and therefore must be "purposeful[ly] allocate[ed]."  Fourth Amendment to the Declaration Under the Public Readiness and Emergency Preparedness Act for Medical Countermeasures Against COVID-19 and Republication of the Declaration, 85 Fed. Reg. 79190, 79197 (Dec. 9, 2020).  In an Advisory Opinion issued January 8, 2021, the Office of the Secretary further expounded upon this as to program planners (including Moving Defendant) by explaining that "decision-making that leads to the non-use of covered countermeasures by certain individuals is

---

[1] The Office of the Secretary specifically invoked immunity related to respiratory devices approved by NIOSH as covered countermeasures for a period from March 27, 2020, until October 1, 2024. 85 Fed. Reg. 21012.

the grist of program planning, and is expressly covered by the PREP Act." See Exhibit "B" at 4 (emphasis added).

Plaintiffs' claims in the instant matter directly relate to Moving Defendant's use of covered countermeasures under the PREP Act; specifically, the use of a test/diagnostic to diagnose the COVID-19 infection in Christopher Beaty and his roommate in conjunction with the Facility's practices of cohorting and/or treating symptomatic and asymptomatic residents in place. Plaintiffs allege that Fair Acres Geriatric Center began implementing preventative testing of residents in late May 2020. See ECF Doc. 1 at ¶ 31. Plaintiffs aver Mr. Beaty and his roommate were administered preventative COVID-19 tests on May 29, 2020. Id. at ¶ 33. Plaintiffs make no averment that Mr. Beaty or his roommate presented with symptoms of COVID-19 on or before this date. Instead, Plaintiffs aver that both individuals presented with COVID symptoms a few days later, on June 1, 2020. Id. at ¶ 34, 37. On June 2, test results returned and indicated Mr. Beaty's roommate was positive for the infection but Mr. Beaty was not. Id. at ¶ 38. Plaintiffs confirm the roommate was promptly removed from Mr. Beaty's room. Ibid. Despite the above, Plaintiffs allege that the administration of the COVID test to Mr. Beaty and his roommate to confirm the presence of the infection was improper. Id. at ¶ 36. Instead, Plaintiffs' argument is based on hindsight that this preventative diagnostic should not have been utilized because Mr. Beaty's roommate tested positive on that date while Mr. Beaty did not, despite Mr. Beaty and his roommate reportedly being asymptomatic on the date of testing and both later presenting as symptomatic of COVID on the same date. Interestingly, Plaintiffs do not provide an alternative countermeasure that "should" have been used to somehow determine the presence of the infection in only one of the two individuals when both presented with symptoms, prior to receiving the results from their preventative test. As such, Plaintiffs' allegations directly

11

relate to Fair Acres Geriatric Center's use and administration of a diagnostic/treatment countermeasure such that Moving Defendant is entitled to PREP Act immunity.

Additionally, Plaintiffs' claims directly relate to Moving Defendant's allocation and/or non-use of covered countermeasures, which has been recognized as covered by the PREP Act. Plaintiffs further cite broad-ranging allegations that Moving Defendant maintained improper and/or inadequate infection control, resource management, testing, policies, supplies, medical equipment, training and supervision of staff.  See generally ECF Doc. 1 at ¶¶ 50-52, 71, 76. These allegations implicate any number of "covered countermeasures" as defined by the PREP Act meant to mitigate the spread of COVID-19, including the use of personal protective equipment (PPE), respirators/N95, surgical masks, gloves, gowns, screening procedures, testing procedures, and medical devices such as thermometers and pulse oximeters.  See also Garcia v. Welltower OpCo Group, --- F.Supp.3d ---, 2021 WL 492581, at *8 (C.D. Cal. Feb. 10, 2021) ("[A]llegations of use and misuse of PPE and infection control measures directly relate to covered countermeasures within the meaning of the PREP Act.").

Plaintiffs allege that these actions and inactions directly caused the decedent's COVID-19 diagnosis and death. See, e.g., id. at ¶ 78.  Based on the above, Plaintiffs' claims arise out of, relate to, and/or otherwise resulted from the alleged administration or use of a covered countermeasure within the meaning of 42 U.S.C.A. § 247d-6d(a)(1).  Thus, Moving Defendant is entitled to immunity from Plaintiffs' claims under the PREP Act.

### iv.    Moving Defendant Obtained the Covered Countermeasures through a "Specified Means of Distribution"

In the March 10, 2020 Declaration, the Secretary limited immunity to covered countermeasures "obtained through a particular means of distribution."  85 Fed. Reg. at 15200. The Secretary defined a means of distribution as "activities authorized in accordance with the

public health and medical response of the Authority Having Jurisdiction to prescribe, administer, deliver, distribute, or dispense the Covered Countermeasures following a Declaration of an emergency." <u>Id.</u>  It has already been established that Moving Defendant, acting as a licensed skilled nursing facility responsible for the health and safety of its residents, possesses the requisite "Authority Having Jurisdiction" as defined by the PREP Act.  Moreover, it is beyond dispute that the countermeasures cited by Plaintiffs, including the preventative diagnostic test administered to Mr. Beaty and those otherwise necessary for the distribution, administration and implementation of supplies, equipment, infection control, training, resource management, and testing related to COVID-19, were obtained by nature of this authority.

### v.       The PREP Act Preempts Plaintiffs' § 1983 Claims

Dismissal is further proper under Rule 12(b)(6) because Plaintiffs' § 1983 claims are expressly preempted by the PREP Act.  When two federal statutes appear to conflict, "it is the duty of the courts . . . to regard each as effective" "<u>absent a clearly expressed congressional intention to the contrary</u>."  <u>Morton v. Mancari</u>, 417 U.S. 535, 551 (1974) (emphasis added).

The plain language of the PREP Act is clear that it was meant to limit liability of covered persons "under Federal [law]," which would include 42 U.S.C.A. § 1983 under which Plaintiffs bring their claims in the instant matter.  42 U.S.C.A. § 247d-6d(a)(1).  This is in keeping with the legislative intent of the PREP Act when it was first passed in 2005.  Indeed, the PREP Act was drafted specifically to provide limited immunity to certain persons in the event of responding to a pandemic flu or bioterror threat to ensure that treatment and a vaccine could be developed and administered.  151 Cong. Rec. H12264 (daily ed. Dec. 18, 2005) (statement of Rep. Deal).

Moreover, following the March 10, 2020 Declaration when a pandemic flu presented itself in COVID-19, HHS has continued to reinforce the legislative intent and plain language of the preemption clause in its Advisory Opinions and Amendments to the Declaration.  In its April

17, 2020 Advisory Opinion, the Office of the Secretary reiterated: "PREP Act immunity must be read in light of the PREP Act's broad, express-preemption provision." (A copy of the April 17, 2020 Advisory Opinion, as Modified on May 19, 2020, is attached hereto as Exhibit "C"). Finally, on January 8, 2021, the Office of the Secretary issued an Advisory Opinion which plainly stated that the PREP Act is a complete preemption statue.  See Exhibit "B"; see also Garcia, supra, 2021 WL 492581 at *7 (holding that the PREP Act provides for complete preemption in accordance with the January 8, 2021 Advisory Opinion).

As outlined supra, Plaintiffs' allegations as to Moving Defendant fall within the covered persons and covered countermeasure requirements of the PREP Act.  Because Congress intended the PREP Act to serve as the exclusive federal remedy of individuals such as Plaintiffs in the event of a pandemic flu such as COVID-19, the PREP Act completely preempts Plaintiffs' § 1983 claims.

For the foregoing reasons, dismissal of the Complaint is proper under Rule 12(b)(6) for failure to state a claim upon which relief can be granted.

### B. MOTION TO DISMISS ANY AND ALL OF PLAINTIFFS' CLAIMS OF WILLFUL MISCONDUCT FOR INSUFFICIENCY IN THEIR PLEADING

The PREP Act outlines one exception to its immunity: claims for "death or serious physical injury proximately caused by willful misconduct."  42 U.S.C.A. § 247d-6d(d)(1). Plaintiffs bear the burden of proving, by clear and convincing evidence, the willful misconduct by each covered Defendant and that the specified willful conduct caused death or serious physical injury.  Id. at § 247d-6d(c)(3).  Plaintiffs must plead the alleged facts surrounding the alleged acts or omissions constituting "willful misconduct" and injuries with particularity, and the Plaintiffs are required to verify the Complaint.  Id. at § 247d-6d(e)(3)-(4).  Furthermore, Plaintiffs are required to attach certified medical records in support of the allegations that the

specified "willful misconduct" proximately caused the alleged injuries.  Id. at § 247d-6d(e)(4)(C).  Moreover, the United States District Court for the District of Columbia maintains exclusive jurisdiction over claims of "willful misconduct" under the PREP Act.  Id. at § 247d-6d(e)(1).

To the extent that Plaintiffs have attempted to bring forth any claims for willful misconduct, the same must fail for insufficient pleading and failure to state a claim pursuant to Rule 12(b)(6).  In their Complaint, Plaintiffs allege that Moving Defendant "negligently, grossly negligently, recklessly, willfully and wantonly" breached various duties owed to Mr. Beaty, and proceed to list thirty-three (33) vague and overbroad allegations regarding policies, procedures and communications.  See ECF Doc.1 at ¶ 71.  Plaintiffs attached no relevant records to their Complaint in support of these claims, nor did Plaintiffs specify any act or omission with any particularity.  Moreover, Plaintiffs specify no injury resulting from said "negligent, grossly negligent, reckless, willful and wanton" alleged breaches of duties.  Ibid.  Finally, neither Plaintiff verified the Complaint, in violation of the Act.  See ECF Doc. 1.  As such, any attempt to allege "willful misconduct" as an exception to Moving Defendant's PREP Act immunity wholly fails, and must be dismissed from Plaintiffs' Complaint.

### C.  MOTION TO DISMISS PLAINTIFFS' COMPLAINT FOR FAILURE TO EXHAUST ADMINISTRATIVE REMEDIES

Plaintiffs' claims must be dismissed with prejudice pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6) for failure to exhaust the administrative remedies provided by the PREP Act.  See 42 U.S.C.A. § 247d-6e; Brady v. May, 2005 WL 3560809 (W.D. Pa. Dec. 28, 2005) (reasoning failure to exhaust administrative remedies subject to "factual challenge" of 12(b)(1) and "legal sufficiency of the complaint" per 12(b)(6)).  Upon a Secretary's declaration under the PREP Act, an emergency "Covered Countermeasure Process Fund" is established to serve as the exclusive

remedy to provide compensation for "covered injuries directly caused by the administration or use of a covered countermeasure."  42 U.S.C.A. § 247d-6e(a), (d)(4) ("[This] remedy . . . shall be exclusive of any other civil action or proceeding for any claim or suit.").  Moreover, the PREP Act mandates that an individual may not bring a civil action related to "willful misconduct" unless they have exhausted all administrative remedies available.  Id. at § 247d-6e(d)(1).  When a statute contains such mandatory language, a court "may not excuse" a potential claimant's failure to exhaust the provided remedies.  Ross v. Blake, 135 S.Ct. 1850, 1857 (2016) (citing Miller v. French, 530 U.S. 327, 337 (2000)).

As explained above, Plaintiffs have brought a claim of personal injury and death related to the administration of a covered countermeasure in response to the COVID-19 pandemic, directly within the purview of the PREP Act.  However, Plaintiffs have proffered no evidence that they have exhausted all administrative remedies available for their claims under the PREP Act.  As such, Plaintiffs' Complaint must be dismissed with prejudice.

> **D.   MOTION TO DISMISS COUNTS I AND II OF PLAINTIFFS' COMPLAINT PURSUANT TO FED. R. CIV. P. 12(b)(6) AS PLAINTIFFS HAVE FAILED TO ESTABLISH A VIOLATION OF 42 U.S.C. § 1983 BECAUSE PLAINTIFF HAS FAILED TO ESTABLISH THAT ANY STATUTE CITED IN PLAINTIFFS' COMPLAINT CONFERS AN ENFORCEABLE INDIVIDUAL RIGHT**

In order to allege a violation of 42 U.S.C. § 1983, Plaintiffs must first identify an individual federal right, "not merely a violation of federal law[,]" that can be remedied under § 1983.  See Grammer, 570 F.3d 520, 525 (3d Cir. 2009); see also Blessing v. Freestone, 520 U.S. 329, 340 (1997); Gonzaga University v. Doe, 536 U.S. 273, 279–80 (2002).  Here, Plaintiffs fail to identify an individual federal right that can be remedied under § 1983.  While the Third Circuit has held in Grammer that *certain* provisions of the FNHRA confer individual rights, a multitude of other courts have subsequently addressed the Third Circuit's holding in Grammer

16

and have disagreed with the holding of the Third Circuit.  Compare Grammer, 570 F.3d 520

(holding that "the various provisions of the FNHRA under which [Plaintiff sued] do confer

individual rights"); with Hawkins v. County of Bent, Colo., 800 F. Supp. 2d 1162, 1165–69 (D.

Colo. 2011) (asserting that "**the Third Circuit's decision in *Grammer* is inconsistent with the**

**strict tests set forth by the Supreme Court in <u>Gonzaga</u>**" and holding that the FNHRA did not

confer individual, enforceable rights, stating "**merely because Congress intended to benefit**

**nursing home residents through the FNHRA regulations does not mean that Congress**

**intended to bestow an individual enforceable right** upon them"); Fiers v. La Crosse County,

132 F. Supp. 3d 1111 (W.D. Wisc. 2015) (asserting that **the court declined to follow the Third**

**Circuit's holding** in Grammer and holding that "the FNHRA does not confer federal rights and,

accordingly, cannot support a cause of action under section 1983");  Kalan v. Health Center

Commission of Orange County, Virginia, 198 F. Supp. 3d 636 (W.D. Va. 2016) (holding that the

statutory and **regulatory provisions of the FNHRA "do not confer federal rights to nursing**

**home residents** [. . .] and, thus, cannot support a cause of action under § 1983"); James v. Board

of Curators of the University of Missouri, 2011 WL 147910 (E.D. Mo. Jan. 18, 2011) (Memo.

Op.) (asserting that **"[t]he majority of courts to consider whether the FNHRA provides an**

**implied right of action have determined it does not[,]"** and therefore holding that plaintiff

could not assert a private cause of action under 42 C.F.R. § 483.25); Sanguinetti v. Avalon

Health Care, Inc., 2012 WL 2521536 (E.D. Ca. June 28, 2012) (agreeing with the Hawkins court,

*supra*, and **concurring in the Hawkins court's criticism of Grammer, holding that the**

**FNHRA did not create an individual right**); Baum v. Northern Dutchess Hosp., 764 F. Supp.

2d 410 (N.D. N.Y. 2011) (declining to follow the holding of Grammer, and adopting the position

that the "**FNHRA does not clearly and unambiguously authorize a private federal cause of**

17

**action for nursing home residents[,]**" as the "**FNHRA establishes 'yardsticks' to measure aggregate performances of the programs and services, and not the particular needs of any particular person**"); Duncan v. Johnson-Mathers Health Care, Inc., 2010 WL 3000718 (E.D. Ky. July 28, 2010) (holding that "[b]ecause **Congress has not spoken with a clear voice and manifested an unambiguous intent to confer individual rights on nursing home residents**, this Court finds that there is no basis for private enforcement directly under the [FNHRA] or under section 1983").

In order to determine whether a specific statute confers an individual right, the analysis delineated by the United States Supreme Court in Blessing v. Freestone must be applied, as it was applied in the cases cited *supra*. See 520 U.S. 329 (1997). In Blessing, the Supreme Court noted that there are three traditional factors for determining whether a particular statutory provision gives rise to a federal right: (1) "Congress must have intended that the provision in question benefit the plaintiff[;]" (2) "the plaintiff must demonstrate that the right assertedly protected by the statute is not so 'vague and amorphous' that its enforcement would strain judicial competence[;]" and (3) "the statute must unambiguously impose a binding obligation on the States." Id. at 340–41. Further, the Supreme Court has noted that a statute must be phrased in terms of the persons benefitted in order to create private rights. Gonzaga Univ. v. Doe, 536 U.S. 273, 284 (2002). As the inquiry focuses on congressional intent, the Blessing court also held that a claim pursuant to § 1983 is properly dismissed if Congress either expressly forecloses recourse pursuant to § 1983, or impliedly forecloses recourse "by creating a comprehensive enforcement scheme that is incompatible with individual enforcement under § 1983." Blessing, 520 U.S. at 341.

> **i.** **Pursuant to the First <u>Blessing</u> Factor, Congress Did Not Intend the Provision in Question to Confer an Individual Right**

The Third Circuit in <u>Grammer</u> misinterpreted the tests enumerated by the United States Supreme Court in <u>Blessing</u> and <u>Gonzaga</u>.  <u>See</u> <u>Grammer</u>, 570 F.3d 520; <u>see also</u> <u>Blessing</u>, 520 U.S. 329; <u>Gonzaga</u>, 536 U.S. 273.  At the outset in <u>Grammer</u>, the Third Circuit addressed the first <u>Blessing</u> factor and concluded that the FNHRA, codified at 42 U.S.C. 1396r, and the accompanying regulations, were "intended to benefit Medicaid beneficiaries and nursing home residents[.]"  570 F.3d at 527.  However, as noted by the United States District Court for the District of Colorado in the <u>Hawkins</u> decision, "merely because Congress intended to **benefit** nursing home residents through the FNHRA regulations does not mean that Congress intended to bestow an **individual enforceable right** upon them."  <u>Hawkins</u>, 800 F. Supp. 2d at 1165–69 (addressing specifically that <u>Grammer</u> is inconsistent with the strict tests set forth by the Supreme Court).  Ultimately, the Court in <u>Gonzaga</u> made it clear that "it is *rights*, not the broader or vaguer 'benefits' or 'interests,' that may be enforced under the authority" of § 1983.  536 U.S. at 283 (emphasis in original).

Further, in <u>Grammer</u>, the Third Circuit held that the FNHRA was directly concerned with "whether each individual placed in a nursing home receives proper care."  570 F.3d at 527–28.  However, this has also been contradicted by other courts, most notably in <u>Baum</u>, in which the Northern District of New York asserted that "[i]n essence, FNHRA establishes 'yardsticks' to measure aggregate performances of the programs and services, and not the particular needs of any particular person."  <u>Baum</u>, 764 F. Supp. at 425–26.  In fact, the FHNRA, codified at 42 U.S.C. § 1396r, appears under 42 U.S.C. Ch. 7, Subch. XIX, which is titled "Grants to States for Medical Assistance Programs[,]" with those statutory provisions codified at 42 U.S.C. § 1396r providing requirements for nursing facilities to continue to receive federal funds.

Thus, the first <u>Blessing</u> factor must weigh against any of the FNHRA provisions cited by Plaintiffs in the Complaint as conferring individual rights, despite the Third Circuit's holding in <u>Grammer</u>.  <u>See</u> ECF Doc. 1; <u>see also</u> <u>Grammer</u>, 570 F.3d 520.  The provisions of the FNHRA were intended by Congress to act as benchmarks, to measure the performance of programs and services in skilled nursing facilities, so as to establish a baseline for facilities receiving federal funding.  <u>See</u> <u>Hawkins</u>, 800 F. Supp. 2d at 1166–67, n.1 (citing H.R. Rep. 100–391(I), at 452 (1987) (asserting that Congress was troubled that the Medicaid program continued to pay nursing facilities for providing poor quality care to beneficiaries, and thus the legislative history demonstrates that Congress was focused on the use of Medicaid funding to control quality, not on the creation of individual rights).  These provisions are directed to the nursing facility, not the resident.

Benchmarks such as the provisions of the FNHRA, despite indirectly benefitting residents of skilled nursing facilities, were not intended by Congress to directly benefit individual residents of facilities, but rather the provision of skilled nursing services at large. Like the statutory provisions at issue in <u>Gonzaga</u>, the FNHRA speaks only to the regulators, administrators, and operators of skilled nursing facilities, and not to the individual residents so as to confer an individual entitlement enforceable under § 1983.  <u>Gonzaga</u>, 536 U.S. at 287; <u>see also</u> <u>Blessing</u>, 520 U.S. at 343.  Thus, Congress did not intend for the provisions of the FNHRA themselves to directly benefit residents, and did not intend to confer individual rights that are enforceable under 42 U.S. C. § 1983.  Therefore, Plaintiffs' claims pursuant to § 1983 at Counts I and II of Plaintiffs' Complaint must be dismissed pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief may be granted.

      **ii.**      **Pursuant to the Second <u>Blessing</u> Factor, the Rights Plaintiffs Assert are Conferred by the FNHRA are so Vague and Amorphous as to Strain Judicial Competence in Application**

Next, the Third Circuit performed a cursory analysis of the second <u>Blessing</u> factor, finding that "[t]he repeated use of the phrases 'must provide,' 'must maintain' and 'must conduct' are not unduly vague or amorphous such that the judiciary cannot enforce the statutory provisions." <u>Grammer</u>, 570 F.3d at 528. However, the Third Circuit again missed the mark with their analysis of the second <u>Blessing</u> factor, which indicates that the "*right assertedly protected by the statute*" must not be "so 'vague and amorphous'" so as to cause its enforcement to strain judicial competence. 520 U.S. at 340–41 (emphasis added). Instead of assessing the rights plaintiffs alleged are protected by the statutes, the Third Circuit looked merely to the mandatory language of the statutes themselves. <u>See</u> <u>Grammer</u>, 570 F.3d at 528.

However, it is not the mandatory language that would give rise to the substantive right to be enforced, which is more appropriately addressed under the third <u>Blessing</u> factor that asks whether the States are unambiguously bound. Here, the substantive language of the statutory provisions cited by Plaintiffs in the Complaint are what need to be examined to determine whether the right itself that is assertedly protected by the statute is vague and amorphous.

Throughout the FNHRA, Congress set forth vague requirements without a clearly defined structure, such as to "care for residents in such a manner and in such an environment as will promote maintenance or enhancement of the quality of life of each resident;" however, the statute does not define what manner, the expected environment, or what is meant by maintenance or the enhancement of quality of life. <u>See</u> 42 U.S.C. §1396r(b)(1)(A). All of the statutory provisions cited by Plaintiffs in the Complaint contain similar vague and amorphous language that lacks the clearly defined structure and focus required to confer an individual right under the second <u>Blessing</u> factor. <u>See</u> 42 U.S.C. § 1396r *et seq*; <u>see also</u> ECF Doc. 1, at ¶ 76(a)-(ii). Thus,

the provisions of the FNHRA are so vague and amorphous, that judicial competence would be strained in applying the statutory provisions as an individual right without a further defined structure or focus, and the second factor of Blessing weighs against a finding that the FNHRA confers individual rights.  Therefore, Plaintiffs' claims pursuant to § 1983 at Counts I and II of Plaintiffs' Complaint must be dismissed pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief may be granted.

>       iii.       **Pursuant to the Third Blessing Factor, the FNHRA Unambiguously Binds the States Pursuant to the Spending Clause, and Therefore Cannot Confer an Individual Right**

Finally, the Third Circuit again provided a cursory analysis of the third Blessing factor, finding, in a two-sentence analysis, that the language of the FNHRA "unambiguously binds the states and nursing homes as indicated by the repeated use of "must."  Grammer, 570 F.3d at 528. While the FNHRA does bind the states and vis a vis the nursing homes, it does so only to the extent that it regulates federal funding, by predicating federal funding to nursing homes upon the care provided by them.  Thus, here, the third Blessing factor weighs, at best, neutrally in regard to whether the FNHRA confers an individual right, enforceable through § 1983.  Therefore, Plaintiffs' claims pursuant to § 1983, at Counts I and II of Plaintiffs' Complaint, must be dismissed pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief may be granted.

>       iv.       **Pursuant to Gonzaga, the FNHRA is Not Phrased in Terms of the Persons Benefitted, but Rather in Terms of the Regulated Class**

Pursuant to Gonzaga, the statutory provision in question must also be phrased in terms of the persons benefitted to confer an individual right, however here, the FNHRA is phrased in terms of the regulated class.  536 U.S. at 284.  The FNHRA repeatedly establishes requirements directed to nursing facilities, and phrases the statutory provisions as such.  See e.g. 42 U.S.C. §

1396r(b)(1)(A) ("A nursing facility must [. . .]"); 42 U.S.C. § 1396r(b)(2) ("A nursing facility

must provide [. . .]"); 42 U.S.C. § 1396r(b)(3)(A) ("A nursing facility must [. . .]"); 42 U.S.C. §

1396r(b)(4)(A) ("To the extent needed to fulfill all plans of care described in paragraph (2), a

nursing facility must provide [. . .]"); 42 U.S.C. § 1396r(b)(4)(C) ("With respect to nursing

facility services provided on or after October 1, 1990, a nursing facility -"); 42 U.S.C. §

1396r(b)(6) ("A nursing facility must -"); 42 U.S.C. § 1396r(c)(1)(A) ("A nursing facility must

protect and promote [. . .]").

Thus, the FNHRA, as noted above, is phrased in terms of the regulated class – nursing

facilities, and *not* the persons indirectly benefitted – the residents.  Further, as noted *supra*, the

provisions of the FNHRA were intended by Congress to act as benchmarks directed to skilled

nursing facilities, so as to establish a baseline for facilities receiving federal funding.  See

Hawkins, 800 F. Supp. 2d at 1166–67, n.1 (citing H.R. Rep. 100–391(I), at 452 (1987))

(asserting that Congress was troubled that the Medicaid program continued to pay nursing

facilities for providing poor quality care to beneficiaries, and thus stating that the legislative

history demonstrates that Congress was focused on the use of Medicaid funding, not on the

creation of individual rights).  This further supports that the FNHRA is phrased in terms of, and

directed to, skilled nursing facilities, and not the residents who are admitted therein.  As such,

pursuant to Gonzaga, the FNHRA does not confer individual rights enforceable through § 1983.

Thus, Plaintiffs' claims pursuant to § 1983 at Counts I and II must be dismissed pursuant to Fed.

R. Civ. P. 12(b)(6) for failure to state a claim upon which relief may be granted.

> **v.     Congress has Impliedly Foreclosed Recourse by Creating a
> Comprehensive Enforcement Scheme that is Incompatible with
> Enforcement under § 1983**

The FNHRA, when considered as a whole, contains enforcement provisions which

demonstrate that Congress intended for the FNHRA to be enforced by the Secretary of Health

and Human Services and the States, not through individual action brought under a federal statute. See H.R. Rep. No. 100-391(I), at 452 (1987); see also 42 U.S.C. § 1396r et seq.  Pursuant to the legislative history, the FNHRA was an overhaul of all three elements of the regulatory system for nursing facilities participating in the Medicaid program:

> The IOM report suggests a major overhaul of all three elements of the current regulatory system: the conditions of participation in Medicaid, which define compliance; the survey and certification process, through which compliance is monitored; and sanctions, with which noncompliance is remedied and deterred. [. . .] The central purpose of these amendments is to improve the quality of care for Medicaid-eligible nursing home residents, and either to bring substandard facilities into compliance with Medicaid quality of care requirements or to exclude them from the program.

H.R. Rep. No. 100-391(I), at 452 (1987).  The legislative history itself states that the survey and certification process are the vehicle through which compliance with the FNHRA is monitored, and the sanctions provided by the FNHRA are the vehicle "through which noncompliance is remedied and deterred."  Id.  The FNHRA does not provide for a private cause of action by private individuals to enforce the requirements contained therein.  See 42 U.S.C. § 1396r et seq.

Thus, Congress has impliedly foreclosed private recourse under the FNHRA via § 1983, as Congress has provided a regulatory mode of recourse to "either bring substandard facilities into compliance with the Medicaid quality of care requirements or to exclude them from the program."  H.R. Rep. No. 100-391(I), at 452 (1987).  Private causes of action pursuant to § 1983 do not further the aim of the FNHRA to ensure a facility provides a minimum quality of care to residents in order to receive Medicaid funding, and the FNHRA itself provides that a facility will be excluded from the program or sanctioned for non-compliance.  Id.  As such, there is no enforceable individual right created by any statutory provision of the FNHRA, and Plaintiffs have failed to establish a private individual right enforceable under § 1983.  Thus, Plaintiffs'

claims pursuant to § 1983 at Counts I and II must be dismissed pursuant to Fed. R. Civ. P.

12(b)(6) for failure to state a claim upon which relief may be granted.

> **E.   MOTION TO DISMISS COUNTS I AND II OF PLAINTIFFS' COMPLAINT PURSUANT TO FED. R. CIV. P. 12(b)(6) AS PLAINTIFFS HAVE FAILED TO ADEQUATELY PLEAD FACTS IN SUPPORT OF A CAUSE OF ACTION PREDICATED UPON 42 U.S.C. § 1983**

Plaintiffs, at Counts I and II, attempt to state a cause of action predicated upon 42 U.S.C.

§ 1983 as to Moving Defendant.  See ECF Doc. 1, at Counts I and II.  In order to establish a

cause of action pursuant to 42 U.S.C. § 1983, a plaintiff must allege that the defendant deprived

her of some cognizable federal right, privilege or immunity, and that person deprived her of that

right while acting under the color of state law.  Colburn v. Upper Darby Township, 838 F.2d

663, 667 (3d Cir. 1988), *cert. denied*, 489 U.S. 1065 (1989).  General allegations of fact are not

sufficient to establish a cognizable § 1983 claim.  The complaint must set forth facts sufficient to

establish both elements and to provide "defendants with adequate notice to frame an answer."

Youse v. Carlucci, 867 F. Supp. 317, 319 (1994) (citing Colburn, 838 F.2d at 667).

A claimant must aver "specific allegations of fact which indicate a deprivation of

constitutional rights; allegations which are nothing more than broad, simple and conclusory

statements are insufficient to state a claim under this statute."  Alfaro Motors, Inc. v. Ward, 814

F.2d 883, 887 (2d Cir. 1987).  In order to establish a violation of a liberty interest pursuant to 42

U.S.C. § 1983, a person must first establish that she enjoyed a protected liberty interest.  Arce v.

Walker, 139 F.3d 329, 333 (2d Cir. 1998).  Pursuant to the precedent of the Third Circuit, "[n]ot

all laws confer individual rights," and it is Plaintiff's burden to establish that any given statute

does give rise to federal rights enforceable through § 1983.  Robinson v. Fair Acres Geriatric

Center, 2021 WL 672924, at *3 (3d Cir. Feb. 22, 2021) (citing Grammer, 570 F.3d at 525).

Even assuming, *arguendo*, that Mr. Beaty had federally protected rights under the Federal Nursing Home Reform Amendments, Plaintiffs still must identify the specific right and establish the elements of a §1983 action as set forth in the case of <u>Monell v. N.Y. City Dep't of Soc. Servs.</u>, 436 U.S. 658, 691-95 (1978); <u>see also</u> <u>Grammer</u>, 570 F.3d 520.

Under <u>Monell</u> liability, "[t]here are three situations where acts of a government employee may be deemed to be the result of a policy or custom of the governmental entity for whom the employee works, thereby rendering the entity liable under § 1983." <u>Natale v. Camden Cty. Corr. Facility</u>, 318 F.3d 575, 584 (3d. Cir. 2003). First, an employee's action can be said to result from a policy or custom "where the appropriate officer or entity promulgates a generally applicable statement of policy and the subsequent act complained of is simply an implementation of that policy." <u>Id.</u> Second, a challenged action can be considered the result of a policy or custom "where no rule has been announced as policy but federal law has been violated by an act of the policymaker itself." <u>Id.</u> Third, and finally, actions are treated as being the result of policy or custom "where the policymaker has failed to act affirmatively at all, [though] the need to take some action to control the agents of the government is so obvious and the inadequacy of existing practice so likely to result in the violation of constitutional rights, that the policymaker can reasonably be said to have been deliberately indifferent to the need." <u>Id.</u>

Plaintiffs have not pled facts to support the first nor the second scenario, as Plaintiffs have not identified any affirmative policy that led to the alleged injuries, nor have Plaintiffs alleged any affirmative actions by a particular policy maker that allegedly caused any injury. Indeed, Plaintiffs' Complaint contains only a section that avers alleged violations of federal spending clause legislation – the FNHRA. <u>See</u> ECF Doc. 1, at ¶ 76(a)-(ii). Thus, Plaintiffs may attempt to proceed in this case only under the third situation – that Fair Acres demonstrated

deliberate indifference through its failure to act affirmatively to the extent that such can be considered a policy or custom that was likely to result in the violation of constitutional rights. Plaintiffs "must also demonstrate that, through its deliberate conduct, the municipality was the 'moving force' behind the injury alleged." Reitz v. County of Bucks, 125 F.3d 139, 145 (3d Cir. 1997) (quoting Bd. of Cty. Comm'rs of Bryan Cty. v. Brown, 520 U.S. 397, 404 (1997)) (emphasis in original).

The mere failure to comply with a common law duty is not enough to establish liability under § 1983. "The essential element of a § 1983 action is abuse by a state official of his or her official position[.]" Monroe v. Pape, 365 U.S. 167 (1961). The Third Circuit has issued a series of decisions holding that state actors do not violate § 1983 when they negligently violate a plaintiff's rights, finally stating:

> I think that our conclusion in Williams in substance expresses our essential determination here that, absent the conscious decision or deliberate indifference of some natural person, a municipality, as an abstract entity, cannot be deemed to have engaged in a constitutional violation by virtue of a policy, a custom, or failure to train.

Simmons v. City of Philadelphia, 947 F.2d 1042, 1064 (3d Cir. 1991) (referencing Williams v. Borough of West Chester, Pennsylvania, 891 F.2d 458, 467, 472–73 (3d Cir. 1989)). In order to sustain a § 1983 claim for failing to provide proper medical care, Plaintiffs *must* allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs. Colon v. Ramirez, 913 F. Supp. 112 (D.P.R. 1996). Medical negligence does not amount to a violation of a federal right. Id.

As set forth, *infra*, Plaintiffs have failed to state a claim upon which relief may be granted and the Complaint must be dismissed.

27

     **i.**     **Plaintiffs have Failed to Establish a Violation of 42 U.S.C. § 1983 Because Plaintiffs have Failed to Identify an Enforceable Individual Right Under the FNHRA**

As noted above, Plaintiffs bear the burden of establishing that any statute cited by Plaintiffs as a basis for the § 1983 claims gives rise to federal rights enforceable through § 1983. See Robinson v. Fair Acres Geriatric Center, 2021 WL 672924, at *3. Plaintiffs have failed to enumerate how any of the statutes that Plaintiffs list within the Complaint gives rise to any enforceable right pertaining to Mr. Beaty through § 1983, fails to articulate the right established by each of the statutes that was allegedly violated, and fails to relate any allegations regarding Plaintiff's COVID-19 related theories of liability to any *specific, identified* section of the Federal Nursing Home Reform Act

The Complaint allegations are couched in terms of negligence and negligence per se for purported violations of the FNHRA, 42 U.S.C. § 1396, *et seq.*, and the Omnibus Budget Reconciliation Act ("OBRA") regulations, 42 C.F.R. § 483.1, *et seq*. See ECF Doc.1, at ¶ 76(a)-(ii); Count I; Count II. Plaintiffs merely recite that Moving Defendant "failed to comply" with thirty-five (35) separate subsections of both the FNHRA and OBRA, without addressing any specific subsection in detail, and thus utterly neglects to enumerate (1) the right allegedly established by the statute; (2) how said right was violated; or (3) how any alleged violation directly caused Plaintiffs' alleged injuries resulting from COVID-19. See ECF Doc. 1, at ¶ 76(a)-(ii). Essentially, Plaintiffs merely allege a failure to comply with federal statutes, not with any individual right enforceable via § 1983, which sounds in notions of negligence per se, not Monell liability pursuant to 42 U.S.C. § 1983.

As Plaintiffs have failed to adequately plead that Plaintiffs' decedent was entitled to any individual right allegedly established via the FNHRA and OBRA, and further, has failed to identify the rights that Plaintiffs assert are established by said statutes beyond merely pleading

the violation thereof, Plaintiffs have failed to identify any civil right of Plaintiffs' decedent that is actionable under § 1983. Therefore, Plaintiffs' claims pursuant to § 1983 at Counts I and II of Plaintiffs' Complaint must be dismissed for failure to state a claim, as Plaintiffs have not identified the enforceable individual right upon which Plaintiffs' claims are predicated, nor have Plaintiffs established that the decedent was an individual entitled to any purported right granted therein.

> ### ii. Plaintiffs have Failed to Establish a Violation of 42 U.S.C. § 1983 Because Plaintiffs have Failed to Adequately Plead an Official Custom or Policy that Caused a Violation of the Decedent's Civil Rights

Further, Plaintiffs have failed to adequately plead the existence of any custom or policy that caused a violation of Plaintiffs' decedent's enforceable individual rights. See Monell, 436 U.S. at 690-94.

The principle that a Municipality cannot be held liable for the specific failures of its employees is cemented in Supreme Court and Third Circuit precedent. In Monell, the Court held that a local government cannot be held liable under § 1983 based upon a theory of respondeat superior. Monell, 436 U.S. 657 (1993). Rather, a plaintiff may only maintain a direct action against a municipality under § 1983 when the deprivation of a constitutionally protected right was the result of an official policy, custom or usage of the governmental body. See Kranson v. Valley Crest Nursing Home, 755 F.2d 46, 50 (3d Cir. 1985). Thus, within the context of the instant claim predicated upon deliberate indifference in a failure to take affirmative action by the policymakers, Moving Defendant cannot be liable under § 1983 unless official policymakers acted with deliberate indifference to the rights of Plaintiffs' decedent by acquiescing in a custom or policy that led directly to a violation of the decedent's rights. See Monell, 436 U.S. at 658; see also Kranson, 755 F.2d at 50; Simmons v. City of Philadelphia, 947 F.2d 1042, 1059 (3d Cir. 1991).

The Court in <u>Monell</u> defined a municipal policy as a "statement, ordinance, regulation, or decision officially adopted and promulgated by [a local governing] body's officers."  <u>Simmons</u>, 947 F.2d at 1059 (citing <u>Monell</u>, 436 U.S. at 690).  A municipal custom is one which although lacks the formal approval of a policy, has become so persistent and widespread that it constitutes a "custom or usage" with the force of law.  <u>Monell</u>, 436 U.S. at 694.  Such customs arise from practices by state officials that amount to entrenched behavior in the municipal employees.  <u>Id.</u> at 691.  The Court in <u>Monell</u> further concluded that "it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible."  <u>Simmons</u>, 947 F.2d at 1059 (citing <u>Monell</u>, 436 U.S. at 694).

The Third Circuit, in interpreting the holding of <u>Monell</u>, stated that "[a] plaintiff must identify the challenged policy, attribute it to the [governmental body] itself, and show a causal link between execution of the policy and the injury suffered."  <u>Kranson</u>, 755 F.2d at 51 (citing <u>Losch v. Borough of Parkesburg</u>, 736 F.2d 903, 910 (3d Cir. 1984)); <u>see also</u> <u>Black v. Stephens</u>, 662 F.2d 181, 191 (3d Cir. 1981) (requiring a "causal nexus between" municipal regulation and the wrongful act).  A single instance of failing to comply with a policy does not constitute a practice that "is so well settled and permanent as virtually to constitute law."  <u>Watson v. Abington Twp.</u>, 478 F.3d 144, 155 (3d Cir. 2007).  In addition, the mere failure of county employees to comply with a policy does not support a § 1983 claim because the statute was not enacted to guard against negligence.  <u>Kranson</u>, 755 F.2d at 51.

The Complaint fails to state any specific custom, policy, or practice, let alone one that deliberately promotes noncompliance with the mandates of the FNHRA and OBRA.  Rather, Plaintiffs set out only a claim for negligence predicated upon alleged violations that do not

amount to a policy or custom.  Plaintiffs do not cite to or allege any written policy or proclamation in place to promote the type of harm that Plaintiffs allege, or any harm at all. Plaintiffs also fail to point to any other facts to demonstrate the existence of a custom that promoted the alleged harm.  This is not surprising, given the novel nature of a pandemic that was unprecedented, unpredictable, and constantly evolving.  It is impossible for any practice to have become so well established to be considered a custom or policy, when each day the information, guidance, and requirements directed toward long-term care facilities, such as Fair Acres, changed constantly – often multiple times a day.

Further, Plaintiffs neglect to include averments relating to the context in which Plaintiffs' claims occurred, as this would defeat the existence of a custom or policy constituting a basis for § 1983 claims.  A practice cannot constitute an official custom or policy when related to supply-chain disruptions and the lack of availability of reliable COVID-19 testing, that plagued the world during the early stages of the pandemic and was beyond Defendant's control .

Thus, as Plaintiffs have failed to affirmatively plead the existence of any specific custom or policy that was promulgated and caused a violation of any individual right of the decedent, Plaintiffs are left with nothing more than a list of statutes and claims sounding in negligence per se.  Therefore, as the Complaint fails to adequately plead the existence of any custom or policy that directly caused injuries, the Complaint must be dismissed.

### iii.   Plaintiffs have Failed to Establish a Violation of 42 U.S.C. § 1983 Because Plaintiffs Have Failed to Adequately Plead that any State Actor Acted with Deliberate Indifference to the Decedent's Civil Rights

Further, the mere failure to comply with a common law duty or a statute is not enough to establish liability under § 1983.  "The essential element of a § 1983 action is abuse by a state official of his or her official position."  Monroe v. Pape, 365 U.S. 167 (1961).  The Third Circuit

has issued a series of decisions, holding that state actors do not violate § 1983 when they

negligently violate a plaintiff's rights, stating:

> I think that our conclusion in Williams in substance expresses our
> essential determination here that, absent the conscious decision or
> deliberate indifference of some natural person, a municipality, as
> an abstract entity, cannot be deemed to have engaged in a
> constitutional violation by virtue of a policy, a custom, or failure to
> train.

Simmons, 947 F.2d at 1064 (referencing Williams v. Borough of West Chester, Pennsylvania,

891 F.2d 458, 467, 472-473 (3d Cir. 1989) (emphasis added)).

Mere medical negligence, as is alleged here, does not amount to a deliberate or conscious

violation of a federal right.   Colon v. Ramirez, 913 F. Supp. 112 (D.P.R. 1996).   Plaintiffs'

allegation that Fair Acres provided "breached its duties owed to Plaintiffs' Decedent" is merely an

allegation of negligence as to the skilled nursing facility.   See ECF Doc. 1, at ¶ 71.   The Complaint

contains only blanket assertions of negligence and failures to train, as well as a litany of statutory

and code sections that Fair Acres allegedly violated.   See ECF Doc. 1, at ¶¶ 71(a)-(gg); 76(a)-(ii)

(asserting baldly that Defendant "breached its duties owed to Plaintiffs' Decedent" and "failed to

comply" with a myriad of spending clause regulations).   Plaintiffs, however, create no nexus as to

how such alleged violations were deliberately indifferent and intended to cause injury, nor how

any alleged violation actually caused injury.   As none of the facts alleged by Plaintiffs indicate

that Fair Acres acted with deliberate indifference in regard to the care provided to the decedent,

nor to the training of staff in areas related to the decedent's alleged injuries, Plaintiffs have failed

to state a claim and the  Complaint must be dismissed.

**F.  MOTION TO DISMISS COUNT I OF PLAINTIFFS' COMPLAINT AS NO SEPARATE CAUSE OF ACTION EXISTS FOR WRONGFUL DEATH DAMAGES PURSUANT TO § 1983 WHERE PLAINTIFFS' ARE THE ADMINISTRATORS OF THE ESTATE AND HAVE NO STANDING PREDICATED UPON THE DECEDENT'S RIGHTS**

Plaintiffs, at Count I of Plaintiffs' Complaint, attempt to state a cause of action predicated upon 42 U.S.C. § 1983, and seek damages pursuant to the Pennsylvania Wrongful Death Act, 42 Pa. C.S. § 8301.  The Pennsylvania Wrongful Death Act creates a separate and distinct right of action for the "spouse, children or parents of the deceased," and is not a continuation of any right that accrued to the decedent themselves.  *See* 42 Pa. C.S. § 8301(a)-(b).  A wrongful death action "does not compensate the decedent – 'it compensates the survivors for damages which they have sustained as a result of the decedent's death.'"  Massey v. Fair Acres Geriatric Center, 881 F. Supp. 2d 663, 670 (E.D. Pa. 2012).  Pursuant to United States Supreme Court and Third Circuit precedent, an individual may not bring a cause of action for the deprivation of another person's civil rights.  O'Malley v. Brierley, 477 F.2d 785, 788-89 (3d Cir. 1973); see also United States v. Raines, 362 U.S. 17, 22 (1960); McGowan v. Maryland, 366 U.S. 420, 429 (1961).

Under Pennsylvania law, a wrongful death claim under 42 Pa.C.S.A. §8301 is a separate and distinct right of action belonging to statutory claimants to compensate them for damages they sustained as a result of the decedent's death.   Pisano v Extendicare Home s Inc., 77 A.3d 651, 656-658 (Pa. Super. 2013), appeal denied 86 A.3d 233 (Pa 2014).  See also, Massey, 881 F. Supp. 2d at 669-70 (holding that where the plaintiff brought an action for the decedent's "personal civil rights under § 1983 in the guise of a state-law claim for wrongful death under Section 8301[,]" that this was to avoid the governmental immunity defense and the claim was not one for wrongful death); but cf. Moyer v. Berks Heim Nursing Home, 2014 WL 1096043, at *3 (E.D. Pa. Mar. 20, 2014) (holding that where the only damages that may have been recoverable under the Wrongful

Death Act were likely recoverable in the absence of a viable wrongful death claim, the court allowed the claims to survive the pleading stage).

Here, the alleged individual rights upon which this action is premised are those of Christopher David Beaty, a nursing home resident.  See ECF Doc. 1.  While Plaintiffs may be statutory beneficiaries under the Pennsylvania Wrongful Death Act, they are not nursing home residents. They cannot pursue their own state based claims upon the alleged deprivation of another's civil rights.  See O'Malley, 477 F.2d at 788-89; Raines, 362 U.S. at 22; McGowan, 366 U.S. at 429.  Further, they have not identified any federal rights of their own that were allegedly violated.

Accordingly, Count I of the Complaint asserting a wrongful death action under 42 Pa.C.S.A. §8301 must be dismissed.

## V.     **CONCLUSION**

For all the foregoing reasons, Moving Defendant respectfully requests that this Honorable Court grant the instant motion and enter the attached Proposed Order dismissing Plaintiffs' Complaint in its entirety.

Respectfully submitted,

**BURNS WHITE LLC**

BY:     */s/ Brittany Ann Kane*
        William J. Mundy, Esquire
        Brittany A. Kane, Esquire
        *Attorneys for Defendant, Delaware County*
        *d/b/a Fair Acres Geriatric Center*

Dated: June 7, 2021