IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CHRISTOPHER BEATY, JR. and | : | |
| NICHOLE GARCIA, | : | |
| as Co-Administrators of the Estate of | : | |
| CHRISTOPHER DAVID BEATY, deceased, | : | |
| and in their own right, | : | |
| Plaintiffs, | : | |
| | : | |
| v. | : | Civ. No. 21-1617 |
| | : | |
| DELAWARE COUNTY AND | : | |
| FAIR ACRES GERIATRIC CENTER, | : | |
| Defendants. | : | |

## O R D E R

Plaintiffs Christopher Beaty, Jr. and Nichole Garcia—children of Decedent Christopher D. Beaty and co-administrators of his estate—charge that Defendant Delaware County d/b/a Fair Acres Geriatric Center caused their father's death through its lax response to the COVID-19 pandemic. Defendant has moved to dismiss, contending, *inter alia*, that it has statutory immunity and Plaintiffs have not adequately pled a basis for municipal liability. Plaintiffs oppose the Motion, which I will deny.

### I.      PROCEDURAL HISTORY

On April 6, 2021, Plaintiffs initiated the instant claims for wrongful death and survivorship pursuant to 42 U.S.C. § 1983. (Compl., Doc. No. 1.) On June 7, Defendant moved to dismiss; Plaintiffs oppose. (MTD, Doc. No. 9; Resp., Doc. No. 10; Reply, Doc. No. 11.)

### II.     LEGAL STANDARDS

I must conduct a two-part analysis. Fowler v. PMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009). First, I accept Plaintiffs' factual allegations, and disregard legal conclusions or mere recitations of elements. Id. I then determine whether the facts alleged make out a "plausible"

claim for relief.  Id.  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).  Accordingly, the burden is on Defendant to show that Plaintiffs have failed to allege facts sufficiently detailed to "raise a right to relief above the speculative level." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007); Phillips v. Cnty. of Allegheny, 515 F.3d 224, 234 (3d Cir. 2008).

### III.   FACTUAL ALLEGATIONS

As alleged, Decedent Christopher D. Beaty had been a resident of Fair Acres—a Delaware County institution—for some fifteen years when, in early 2020, the COVID-19 Pandemic began. (Complt. at ₱₱ 24-26.)  On March 13, 2020, Fair Acres prohibited visitor access.  (Id. at ₱ 30.)  In late May, Fair Acres began "preventative Covid testing of its residents, including Decedent," who was tested for the virus on May 29, along with his roommate.  (Id. at ₱₱ 31, 33.)  On June 1, while the results of those tests were pending, Decedent informed Defendant that his roommate "was sick and exhibiting symptoms of COVID 19."  (Id. at ₱ 34.)  Later that day, Plaintiffs informed Defendant that "multiple residents [of Fair Acres] were sick," and that Decedent had "contracted a low-grade fever."  (Id. at ₱₱ 35-36.)  The next day, June 2, the results from the May 29 COVID tests indicated that Decedent was negative and his roommate was positive, which prompted the roommate's removal from their shared space.  (Id. at ₱₱ 38.)  Decedent nonetheless continued to exhibit COVID-19 symptoms and tested positive for the virus when admitted to hospital on June 3.  (Id. at ₱₱ 40-43.)  Decedent "passed away on June 6, 2020 due to sequalae of COVID-19."  (Id. at ₱44.)

Plaintiffs describe a litany of Defendant's failures in the weeks before Decedent contracted COVID-19, which collectively allowed the virus to become rampant at Fair Acres and cause

Decedent's death.  These failures include: "[f]ailing to have sufficient staff or equipment (PPE)," "[f]ailing to have policies in place to protect [] residents from COVID-19," and "[f]ailing to following Center for Disease Control guidelines."  (Id. at ¶ 51.)  Plaintiffs thus allege that "as a result of Defendants' conduct, Decedent contracted COVID-19 and died."  (Id. at ¶ 58.)

## IV.    DISCUSSION

In its Motion to Dismiss—which does not conform to the Court's Standing Order respecting font and length—Defendant offers two broad arguments: that the Public Readiness and Emergency Preparedness (PREP) Act precludes liability; and that Plaintiffs have not adequately pled their § 1983 claims.  See 42 U.S.C. § 247d-6d.  Both arguments fail.

The PREP Act provides immunity from suit for those persons and entities that take "countermeasures" to prevent COVID:

> [A] covered person shall be immune from suit and liability under Federal and State law with respect to claims for loss *caused by, arising out of, relating to, or resulting from the administration to or the use by an individual of a covered countermeasure* if a declaration under subsection (b) has been issued with respect to such countermeasure.

42 U.S.C.A. § 247d-6d(a)(1) (emphasis added).  To trigger the immunity provision, there must be "a causal relationship" between the harm alleged and "the administration to or use by an individual of a covered countermeasure." 42 U.S.C. § 247d-6d(a)(2)(B); Lutz v. Big Blue Healthcare, Inc., 480 F.Supp. 3d 1207, 1214 (D. Kan. Aug. 19, 2020) ("the PREP Act creates immunity for all claims of loss causally connected to the administration or use of covered countermeasures, which are certain drugs, biological products, or devices.").  The term "covered countermeasure" does not include "social distancing, quarantining, [or] lockdowns."  See, e.g., Est. of Maglioli v. Andover Subacute Rehab. Ctr. I, 478 F. Supp. 3d 518, 533 (D.N.J. 2020).  Nor does a defendant's *failure* to take countermeasures fall within the scope of the Act's protection, even if such action was

federally mandated.  See, e.g., <u>Est. of Maglioli</u>, 478 F.Supp. 3d at 532; <u>see also</u> <u>Reed v. Sunbridge</u>

<u>Hallmark Health Servs., LLC</u>, 2021 WL 2633156, at *4 (C.D. Cal. June 25, 2021); <u>Lutz</u>, 480

F.Supp. 3d at 1216 (". . .  the PREP Act applies to action, not inaction.").

Defendant urges that the COVID test it administered to Decedent in late May 2020 was a

'countermeasure' that was 'used' and so bears a 'causal relationship' to his death.  (Reply at 5-6,

Doc. No. 11.)  I disagree.  The mere fact that Decedent's test result was pending when he first

become symptomatic does not create a 'causal relationship' between the test and his death.  Nor

do Defendant's decisions regarding quarantining qualify as 'covered countermeasures'.  <u>See</u> <u>Ruiz</u>

<u>v. Conagra Foods Packaged Foods, LLC.</u>, 2021 WL 3056275, at *3 (E.D. Wis. July 20, 2021).

Moreover, the purported decision to keep Decedent in his room until after his roommate's positive

test result was a *failure* to take preventative measures, rather than as an affirmative act, and so

does not fall within the statute's protection.  <u>See</u> <u>Sherod v. Comprehensive Healthcare Mgmt.</u>

<u>Servs., LLC</u>, 2020 WL 6140474, at *7 (W.D. Pa. Oct. 16, 2020).  Similarly, Plaintiff's negligence

claims (e.g. failing to follow CDC guidelines, implement control protocols, etc.) also describe

Defendant's alleged omissions, and so also fall outside the PREP Act.

Defendant relies on HHS's advisory opinions and declarations, which purport to expand

the PREP Act's scope.  The "consensus among district courts across the country," however, is that

claims like Plaintiffs' are outside the act's protection.  <u>See, e.g.</u>, <u>Dupervil v. All. Health Operations,</u>

<u>LCC</u>, 2021 WL 355137, at *12 (E.D.N.Y. Feb. 2, 2021).

Because I conclude that the PREP Act does not apply here, Defendant's contentions citing

the Act's exhaustion requirements, pleading rules, and preemption of § 1983 claims necessarily

fail.

Turning to the § 1983 issues, Defendant makes three arguments for dismissal.

First, Defendant asks me to contradict the Third Circuit's decision in <u>Grammer v. John J. Kane Regional Centers-Glen Hazel</u> and rule that the Federal Nursing Home Reform Amendments do not establish an individual federal right that Plaintiffs may vindicate through a § 1983 action. <u>See</u> 570 F.3d 520 (3d Cir. 2009).  I decline to do so.  <u>See</u> <u>Alexander v. Fair Acres Geriatric Ctr.</u>, 2021 WL 2138794, at *3 (E.D. Pa. May 26, 2021) ("even if the Court was persuaded by Fair Acres' argument, <u>Grammer</u> is binding precedent").

Defendant next urges that Plaintiffs have not adequately pled a basis for <u>Monell</u> liability, arguing that "[i]t is impossible for any practice to have become so well established to be considered a custom or policy" in the ever-evolving context of the pandemic, and "none of the facts alleged by Plaintiffs indicate that [Defendant] acted with deliberate indifference."  (MTD at 31-32.)  I disagree.  At the very least, Plaintiffs have adequately pled deliberate indifference, alleging that: Decedent suffered from comorbidities of which Defendant was aware, making him vulnerable to COVID-19 infection; the World Health Organization declared COVID-19 a global pandemic some three months before Decedent contracted the virus; and Defendant nonetheless failed to take action to protect Decedent from COVID infection, which then caused his death.  (<u>See</u> Compl. at ¶¶ 27-51.)  These allegations are sufficient to state a plausible <u>Monell</u> claim.  <u>See, e.g.</u>, <u>Robinson v. Fair Acres Geriatric Ctr.</u>, 722 F. App'x 194, 198 (3d Cir. 2018) (citing <u>Natale v. Camden Cty. Corr. Facility</u>, 318 F.3d 575, 584 (2003)) (deliberate indifference made out where "policymaker [] failed to act affirmatively" despite the need for action to avoid constitutional violations being "obvious"); <u>id</u>. at 200 (government's "failure to maintain infection control" in nursing home setting was "closely related" to death from infection and thus stated indifference claim); <u>Thomas v. Cty. of Chester, Pocopson Home</u>, 312 F. Supp. 3d 448, 454 (E.D. Pa. 2018) (failure to "develop a plan" addressing resident's health risks sufficient to state indifference claim).

Finally, Defendant argues that Plaintiffs lack standing to bring a wrongful death claim on Decedent's behalf via this § 1983 action.  (MTD at 33-34.)  As the Third Circuit has left this issue open, I will not dismiss Count I at the pleading stage.  See, e.g., DeJesus v. City of Lancaster, 2015 WL 1230319, at *3 (E.D. Pa. Mar. 17, 2015) (citing Moyer v. Berks Heim Nursing Home, 2014 WL 1096043 (E.D. Pa. 2014)) (permitting wrongful death claim to proceed); Becker v. Carbon Cty., 177 F. Supp. 3d 841, 853 (M.D. Pa. 2016) ("At this early stage of the proceedings, without guidance from the Third Circuit, I cannot say, as a matter of law, that Plaintiff is not entitled to pursue a claim under Pennsylvania's wrongful death statute.").

## V.      CONCLUSION

In sum, Plaintiffs' claims survive Defendant's Motion to Dismiss.  Accordingly, I will deny the Motion and issue a scheduling order.

***

**AND NOW,** this 5th day of August, 2021, upon consideration of Defendant's Motion to Dismiss (Doc. No. 9), Plaintiffs' Response in Opposition (Doc. No. 10), and Defendant's Reply (Doc. No. 11), it is hereby **ORDERED** that the Motion (Doc. No. 11) is **DENIED**.

**AND IT IS SO ORDERED.**

*/s/ Paul S. Diamond*

_____

Paul S. Diamond, J.