**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **CHRISTOPHER BEATY, JR.** *et al.*, | : | |
| **Plaintiffs,** | : | |
| | : | |
| **v.** | : | **Civ. No. 21-1617** |
| | : | |
| **DELAWARE COUNTY d/b/a** | : | |
| **FAIR ACRES GERIATRIC CENTER,** | : | |
| **Defendant.** | : | |

## <u>ORDER</u>

Plaintiffs Christopher Beaty, Jr. and Nichole Garcia—children of Decedent Christopher D. Beaty and co-administrators of his estate—charge that Fair Acres Delaware County d/b/a Fair Acres Geriatric Center caused their father's death through its lax response to the COVID-19 pandemic. (Doc. No. 1, Compl.)  In August 2021, I denied Fair Acres' Motion to Dismiss, rejecting Fair Acres' arguments that it has statutory immunity and that Plaintiffs failed to plead a basis for municipal liability, and deferring my ruling on whether Plaintiffs can bring a § 1983 wrongful death action. (Doc. Nos. 9, 12.)  Fair Acres relies on substantially the same arguments in its Motion for Summary Judgment, which I will grant as to Plaintiffs' wrongful death action and otherwise deny.  (Doc. No. 32.)

The Parties are familiar with the facts and procedural history of this case.  I have construed the record most favorably to Plaintiffs and resolved all factual disputes in their favor.  <u>See</u> <u>Hugh v. Butler Cnty. Fam. YMCA</u>, 418 F.3d 265, 267 (3d Cir. 2005); <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322 (1986); Fed. R. Civ. P. 56(c).

## I.      PREP Act Immunity

First, Fair Acres urges (once again) that liability is precluded under the Public Readiness and Emergency Preparedness Act, which provides immunity from suit for persons and entities that take "countermeasures" to prevent COVID-19:

> [A] covered person shall be immune from suit and liability under Federal and State law with respect to claims for loss caused by, arising out of, relating to, or resulting from the administration to or the use by an individual of a covered countermeasure if a declaration under subsection (b) has been issued with respect to such countermeasure.

42 U.S.C.A. § 247d-6d(a)(1).  To trigger the immunity provision, a plaintiff must allege "a causal relationship" between the harm and "the administration or use by an individual of a covered countermeasure."  42 U.S.C. 247d-6d(a)(2)(B).  The term "covered countermeasure" includes "any antiviral, any other drug, any biologic, any diagnostic, [or] any other device . . . used to treat, diagnose, cure, prevent, or mitigate COVID-19," and does not encompass "social distancing, quarantining, [or] lockdowns."  85 Fed. Reg. 15202; Est. of Maglioli v. Andover Subacute Rehab. Ctr. I, 478 F. Supp. 3d 518, 533 (D.N.J. 2020).

Generally, a defendant's *failure* to take countermeasures does not fall within the scope of the Act's protection—unless the failure is "paired closely with an act of administration [of a countermeasure] to another."  Goldblatt v. HCP Praises Village KS OPCO LLC, 516 F. Supp. 3d 1251, 1262 (D. Kan. 2021); see also Lyons v. Cucumber Holdings, LLC, 520 F. Supp. 3d 1277, 1285-86 (C.D. Cal. 2021) ("[P]ursuant to the HHS Secretary's December 3, 2020 Amendment, there is only immunity for 'inaction claims' when the failure to administer a covered countermeasure to one individual has 'a close causal relationship' to the administration of that covered countermeasure to another individual.").  PREP Act immunity thus extends to a

defendant's inaction *only* when the inaction resulted from the "[p]rioritization" or "purposeful allocation" of "limited Covered Countermeasures."  85 Fed. Reg. at 79,197.

Here, Plaintiffs attribute Decedent's death to Fair Acres' *inaction*: specifically, its "fail[ure] to have adequate policies and practices in place for proper testing of the residents" and its failure to isolate Decedent promptly from his symptomatic roommates.  (Doc. No. 34 at 9; see also Doc. Compl. at ¶ 71(t) (accusing Fair Acres of "failing to routinely test residents and staff for COVID-19 so as to properly separate and isolate infected individuals from those who had not been exposed to the virus").)

Fair Acres cannot obtain immunity for its alleged failure to implement routine testing because no record evidence even suggests—let alone establishes—that this failure resulted from the "purposeful allocation" of "limited" test resources.  Nor can Fair Acres claim immunity for its alleged failure to quarantine Decedent or his roommates promptly because quarantining is not a "covered countermeasure."  See Est. of Maglioli, 478 F. Supp. 3d at 533.

Because the PREP Act does not apply here, Fair Acres' exhaustion and preemption arguments necessarily fail.

## II.    Section 1983 Action

Sufficient record evidence supports Plaintiffs' municipal liability action.

A § 1983 plaintiff "must first allege action under the color of state law and a violation of a federally protected law."  Robinson v. Fair Acres Geriatric Center, 722 F. App'x 194, 1987 (3d Cir. 2018); Grammer v. John J. Kane Regional Centers-Glen Hazel, 570 F.3d 520, 532 (3d Cir. 2009) ("42 U.S.C. § 1983 is a vehicle for imposing liability against anyone who, under color of state law, deprives a person of rights, privileges, or immunities secured by the Constitution and laws.").  Plaintiffs have met this threshold requirement by alleging that Fair Acres (owned and

3

operated by Delaware County) violated the Federal Nursing Home Reform Act and its implementing regulations, which unambiguously "confer individual rights that are presumptively enforceable through § 1983." See id. at 532 (various FNHRA provisions create enforceable rights); see also Health & Hosp. Corp. of Marion Cnty. v. Talevski, No. 21-cv-806, 2023 WL 3872515, at *3 (U.S. June 8, 2023) (holding that FNHRA's chemical restraints and transfer/discharge provisions confer enforceable rights).

Because Fair Acres cannot be held liable for its employees' actions under a *respondeat superior* liability theory, Plaintiffs must provide evidence that a Fair Acres policy, custom, or a failure to implement a policy caused the alleged FNHRA violations. Natale v. Camden County Correctional Facility, 318 F.3d 575, 585 (3d Cir. 2003); Monell v. Dep't of Social Servs. of City of New York, 436 U.S. 658, 690 (1978). Monell liability may attach "where the policymaker has failed to act affirmatively at all, [providing] the need to take some action to control the agents of the government is so obvious, and the inadequacy of existing practice so likely to result in the violation of constitutional rights, that the policymaker can reasonably be said to have been deliberately indifferent to the need." City of Canton, Ohio v. Harris, 489 U.S. 378, 390 (1989) (internal quotations and citations omitted).

Here, there is sufficient evidence from which a jury could reasonably find that Fair Acres: (1) knew that Decedent's comorbidities increased his risk for severe COVID-19 outcomes; (2) understood that frequent testing and prompt isolation of symptomatic residents would reduce that risk; and (3) nonetheless failed to take appropriate measures to protect Decedent from contracting COVID, which caused his death. (See, e.g., Doc. No. 34 Ex. F (Dep. Tr. of Lynn Powell, Fair Acres nurse) at 117:4-12 ("populations of nursing home[s] are at high risk for infection, serious illness, and death of COVID"), Ex. M (report of Mark Shepard, M.D.) ("Not implementing the

Department of Health's recommendations/guidelines for isolation of residents or their roommate where one is suspected of suffering from COVID until June 22 demonstrated a reckless indifference to the safety of a patient such as [Decedent].").)

Because a jury could thus infer that Fair Acres was deliberately indifferent to the risk Decedent faced, Plaintiffs' § 1983 claim survives summary judgment.

### III.   Wrongful Death Action

Finally, Fair Acres urges that Plaintiffs cannot seek remedies under Pennsylvania's Wrongful Death Act for their § 1983 claim.  I agree.

A § 1983 plaintiff "cannot sue for the deprivation of another's civil rights."  O'Malley v. Brierley, 477 F.2d 786, 789 (3d Cir. 1973).  Here, Plaintiffs properly assert their father's § 1983 claims *on their father's behalf* in their representative capacities as co-administrators of his estate. See Endl v. New Jersey, 5 F. Supp. 3d 689, 696 (D.N.J. 2014) ("[A] plaintiff who acts in a representative capacity may assert claims of the deceased under Section 1983.").

Because § 1983 is "silent on the method of redress," Plaintiffs seek damages (in part) through a wrongful death action.  See 42 U.S.C. § 1988(a) (allowing for state law to provide appropriate redress for federal law violations).  This position, however, "conflates the provisions of federal and state statutes that set out different remedies to redress different injuries for *different claimants*."  Massey v. Fair Acres Geriatric Ctr., 881 F. Supp. 2d 663, 669 (E.D. Pa. 2012) (emphasis added).

In allowing a decedent's family members to "recover damages for the death of an individual caused by the wrongful act or neglect or unlawful violence or negligence of another," a wrongful death action provides a mechanism for family members to vindicate *their own* rights— not the rights of the deceased. 42 Pa. Cons. Stat. § 8301.  See Massey v. Fair Acres Geriatric Ctr.,

881 F. Supp. 2d 663, 670 (E.D. Pa. 2012) (an action under the Pennsylvania Wrongful Death Statute "does not compensate the decedent—it compensates the survivors for damages which they have sustained as a result of the decedent's death.") (internal quotation marks omitted). Accordingly, these § 1983 Plaintiffs cannot seek redress for violations of their *father's* rights through a wrongful death action. See Alexander v. Fair Acres Geriatric Center, No. 20-2550, 2023 WL 4166456, at *6-7 (E.D. Pa. June 23, 2023) (granting summary judgment on a § 1983 wrongful death claim because a "wrongful death action is not a continuation of the rights of the deceased, but rather is a new cause of action to allow the family members of the deceased to vindicate their rights"); Massey, 881 F. Supp. 2d at 670 (the plaintiff could not bring a § 1983 wrongful death claim because "remedies for a wrongful death do not afford redress for deprivations of [the decedent's] federal rights").

I will thus grant Fair Acres' motion for summary judgment on Plaintiffs' § 1983 wrongful death claim.

\*            \*            \*

**AND NOW**, this 10th day of August, 2023, upon consideration of Defendant's Motion for Summary Judgment and related submissions (Doc. Nos. 32, 34, 38, 39), it is hereby **ORDERED** that the Motion (Doc. No. 32) is **GRANTED in part**.  Judgment is entered for Defendant as to Count I (Plaintiffs' § 1983 wrongful death claim), which is dismissed.  Defendant's Motion is otherwise **DENIED**.

**AND IT IS SO ORDERED.**

*/s/ Paul S. Diamond*

_____

Paul S. Diamond, J.